STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. MARC YOSKOWITZ, DEFENDANT–RESPONDENT.

Argued January 17, 1989—Decided July 19, 1989.

*Carol M. Henderson,* Deputy Attorney General, argued the cause for appellant (*Cary Edwards,* Attorney General of New Jersey, attorney).

*Marlene Yoskowitz* argued the cause for respondent.

PER CURIAM.

Defendant, Marc Yoskowitz, arranged to have his automobile stolen so that he could collect insurance. On March 28, 1985, defendant pleaded guilty in Municipal Court, Livingston, Essex County, to the disorderly-persons offense of filing a false police report. Seven months later the Prosecutor of Union County charged defendant with third-degree arson and third-degree attempted theft by deception. The issue in this appeal is whether a subsequent indictment charging arson and attempted

theft by deception is barred by double jeopardy, the mandatory joinder rule, or fundamental fairness.

# I

In January 1985, the defendant, then eighteen years old, was having financial trouble and his car was experiencing mechanical difficulties. To get money, defendant devised a plan to defraud his insurer, Allstate Insurance Company, by having his 1980 Pontiac Trans Am stolen and then claiming insurance for the loss. In furtherance of the scheme, defendant claims to have met a man named "Andy" at an unnamed bar[1] on or about January 17, 1985, and to have paid Andy $100 to "get rid of [his] car." Defendant described the car to Andy and gave him its license plate number and an extra set of keys. He told Andy he would park the car near the Burger King at the Livingston Mall at about 1:00 p.m. on January 22, 1985.

On that day, defendant drove his car to the Livingston Mall, parked it near the Burger King, locked it, and went shopping. When he returned to the parking lot, his car was missing. Defendant immediately contacted Mall security officers, who assisted him in the futile search for his car. The Livingston Police Department then was called, and defendant reported that his car had been stolen from the mall. The next day he reported the loss to his insurance agent and to Allstate. Although he was aware that the car was a 1980 model, defendant falsely represented to the police and his insurance company that it was a 1982 vehicle. His title papers erroneously indicated that the car was a 1982 model.

Eight days later, on January 30, 1985, at approximately 3:30 a.m., a fire was reported in a deserted area on Village Road in

---

[1] In his statement to the police on March 5, 1985 defendant claims to have met "Andy" in Irvington. However, at the time of his plea of guilty to attempted theft by deception defendant told the trial court that the meeting took place at a bar in Elizabeth.

Union.[2]  On arriving at the scene, firefighters found a burning automobile later identified as defendant's.  The car exploded shortly after their arrival, but the fire was soon extinguished. No one was injured by the blaze.  A search of the immediate area at the time of the fire yielded a piece of cloth and a sports jacket, each of which smelled of gasoline.  The owner of the jacket was never discovered.

The vehicle was examined by fire inspectors from the Union County Bureau of Fire Prevention and an investigator from the Union County Arson Unit.  The investigators concluded that the car had been stripped of valuable accessories and, with gasoline as the probable accelerant, set ablaze from within. That same day, Detective Stan Mazur of the Township of Union Police Department was informed that the matter had been referred to the Union County Arson Unit for further investigation.  A February 1, 1985, Union County Prosecutor's Office (Arson Unit) intra-office report described the burned vehicle as having "been stolen at the Livingston Mall some months ago. . . .  [T]he Livingston Police Department is doing a follow-up investigation on the stolen car aspect along with the Union Police Department."

On February 6, 1985, defendant called Detective Mazur and learned that his car had been recovered and towed to a local auto-repair shop.  Five days later, on February 11, 1985, Detective Stehlgens informed Allstate that the car had been found completely burned and that arson was suspected.  On February 15, 1988, defendant filed with Allstate an "Affidavit of Automobile Total Theft."

Detective Stehlgens of the Livingston Police Department and Detective Mazur of the Union Police Department investigated the theft of the vehicle.  On March 5, 1985, Detective Mazur

---

[2]Defendant at the time of his plea of guilty to attempted theft by deception told the trial court that he was over at a friend's house on the night of the fire and "saw the car being burned."

called defendant and requested that he come to the Union Police Station for questioning. On arrival, defendant met with detectives Mazur and Stehlgens. After being informed of his constitutional rights, and after signing a waiver-of-rights form, defendant agreed to make a statement to the two municipal police officers. No county police officer was present at that meeting. Defendant admitted orally and in a signed confession that his car was not stolen but that he had paid someone he knew only as "Andy" $100 to take his car from the Livingston Mall so that he could collect on the insurance policy. Defendant said that he would try to find out Andy's last name and tell the police. Defendant maintains that he made his written statement in reliance on assurances from the police that he would be charged only with a disorderly-persons offense and not brought into Superior Court.

On March 6, 1985, Detective Stehlgens informed Detective Mazur that he would be signing a complaint against defendant for filing a false police report. Defendant claims that "[t]he Incident Report of Union Police with entries 1/30/85–3/6/85 ... indicates the defendant as being the [sic] accused of the crime of arson for insurance *N.J.S.A.* 2C:17–1(b)(3). Thus both the Union Police and the Livingston Police Officials were aware as early as March 6, 1985, of the arson and knew defendant was involved." This claim by defendant is not supported by the incident report cited, however, because although it contains references to March 6, 1985, the report was dated May 31, 1985.

On the other hand, defendant refers to an entry in an Allstate diary, apparently made on March 6, 1985, that says "Rec'd call from Det Mazur [sic] of Union * * * he has stmt from insured stating he had someone burn his car for him. Still waiting for name of person who burnt [sic] car so req I did not send denial. Closed file after hearing from Det. will refer to fraud div." The Allstate diary, in fact, indicates earlier communications between the authorities and Allstate. On February 11, 1985, Detective Stehlgens called to say insured's car was found in Union "completely burnt—arson Union PD Det Stan Mazur is

investigating." And on February 26, 1985, a conversation took place with "Livingston PD" in which it was communicated that the Livingston authority "will gt together w/ Union Det...."

On March 15, 1985, Detective Stehlgens filed a complaint in the Livingston Municipal Court against defendant, charging him with filing a false police report on January 22, 1985, in violation of *N.J.S.A.* 2C:28–4(b)(1). On March 28, 1985, defendant appeared without counsel at the Livingston Municipal Court and pleaded guilty to that offense. Before defendant's plea was accepted, the municipal court advised him of the charges against him, of his right to consult with an attorney, and of the possible penalties he faced. The following colloquy occurred between the municipal court and defendant:

COURT: Anyone promise you anything or threaten you in any way to induce you to enter this plea?

DEFENDANT: No.

COURT: Do you do so voluntarily?

DEFENDANT: Yes.

COURT: What's this all about? Why did you report your car stolen if it wasn't stolen?

DEFENDANT: Well someone did take it but I, I talked to some guy and I gave him some money to take the car. I just, I guess I wanted to collect on the insurance.

COURT: You were going to beat the insurance company? Is that what you did? You were going to report it stolen, have your buddy take it away and then try and collect from your insurance carrier.

DEFENDANT: Well I didn't know the guy.

COURT: Well so it wasn't your buddy, you had some stranger take it away.

DEFENDANT: That's right.

COURT: How much did you pay him?

DEFENDANT: $100.00

COURT: You mean he gets the car for $100.00 and he takes it to a chop shop and gets it all broken so they can use it for parts, you make $6,000.00 and ... they raise the premiums for everyone else.

DEFENDANT: I know I was wrong and I—they dropped the claim.

The trial court sentenced defendant to one year of probation, fined him $150, and ordered him to pay court costs and a $25 penalty to the Violent Crimes Compensation Board.

On July 2, 1985, the police received information from a person named Stewart Kaiser that defendant had admitted that

he had his car burned. On August 28, 1985, defendant submitted to a polygraph examination at the Union County Prosecutor's Office. Defendant was told in advance of the questions to be asked and signed a waiver of rights. At the examination's conclusion, defendant was informed that his responses to the questions "Did you plan to have your car set on fire?" and "Before your car was set on fire, did you definitely know it was about to happen?" (to which he answered "No") indicated deception on his part. It was also the examiner's opinion from defendant's reactions during the test that he knew that gasoline was the accelerant used in the arson. On being told these results, defendant informed the investigator he had made arrangements with Andy to get rid of the car and that when he had asked Andy how this would be accomplished, Andy had said " 'Probably burn it.' "

On October 30, 1985, a Union County indictment was filed, charging defendant with third-degree arson with the purpose of collecting insurance, contrary to *N.J.S.A.* 2C–17–1b(3), and third-degree attempted theft by deception, contrary to *N.J.S.A.* 2C:20–4(a).

On December 30, 1985, defendant made a motion to dismiss the indictment on the grounds of mandatory joinder, double jeopardy, and the enforcement of a plea agreement. Defendant's motion was denied.

On January 14, 1986, defendant signed a certification in which he said that when he went to the Union Police Station to speak with Detective Mazur and Detective Stehlgens on March 5, 1985,

> Detective Mazur "promised that if I told them about what happened to the car and gave them a statement, that I would be charged with a disorderly persons offense in Municipal Court * * *. They both concurred in that promise. Detective Mazur questioned me, then Detective Stehlgens took a written statement from me. He told me he would be filing a complaint against me in Livingston Municipal Court. The officers told me that if I made the statement the whole thing would be "over."

4. On March 15, 1985, I was charged with filing false police reports * * * I pleaded guilty * * * and I was sentenced. I believed and expected that the entire matter had been disposed of.

On January 31, 1986, defendant's application for PTI was rejected. On appeal the trial court reversed the decisions of the program director and the Prosecutor and ordered that defendant be admitted to PTI. The Appellate Division summarily reversed the trial court and denied Yoskowitz's motion for reconsideration. We denied leave to appeal.

On November 18, 1986, defendant entered a *retraxit* plea of guilty to the charge of attempted theft by deception, but reserved the right to appeal issues pending, including his motion to dismiss the indictment. The State, furthermore, agreed to dismiss the arson count and recommend a non-custodial sentence. Defendant was sentenced to a three-year probationary term with various conditions.

In defendant's appeal to the Appellate Division, he claimed that the indictment for theft and arson must be dismissed because it violates double jeopardy, the mandatory joinder rule, and principles of fundamental fairness. Defendant also contended that the agreement entered between Detectives Stehlgens and Mazur and defendant before he pleaded guilty to the municipal-court charge must be enforced by dismissal of the indictment and that the Appellate Division erred by summarily reversing the trial court's order admitting him to PTI.

The Appellate Division reasoned that the facts do
not fit squarely within either a double jeopardy or a mandatory joinder rule analysis, ... [but] that the law enforcement authorities' failure to handle the municipal charges in one prosecution was contrary to the principles of fundamental fairness and reasonable expectations which are the underpinnings of both double jeopardy and the mandatory joinder rule. [224 *N.J.Super.* 375, 381 (1988).]

The court found "the impingement on these principles * * * so significant and presently incapable of remedy" that it felt "constrained to dismiss Yoskowitz' indictment and to vacate his guilty plea for theft by deception."

We granted the State's petition for certification, 111 *N.J.* 608 (1988), but denied defendant's cross-petition. 111 *N.J.* 648 (1988).

## II

The double-jeopardy clause protects criminal defendants (1) against a second prosecution for the same offense after acquittal; (2) against a second prosecution for the same offense after conviction; and (3) against multiple punishments for the same offense. *State v. Biegenwald,* 110 *N.J.* 521, 532 (1988) (citing *North Carolina v. Pearce,* 395 *U.S.* 711, 717, 89 *S.Ct.* 2072, 2076, 23 *L.Ed.*2d 656, 664–65 (1969)). The instant case involves prosecutions for the same offense following a conviction. In resolving double jeopardy claims, the main difficulty generally is determining "whether the second prosecution is for the same offense involved in the first." *See State v. DeLuca,* 108 *N.J.* 98, 102 (1987), *cert.* den., 484 *U.S.* 944, 108 *S.Ct.* 331, 98 *L.Ed.*2d 358 (1987) (citations omitted) (citing Thomas, *The Prohibition of Successive Prosecutions for the Same Offense: In Search of a Definition,* 71 Iowa L.Rev. 323, 330–35 (1986) (discussing six possible tests for defining "same offense")).

The traditional test for defining a "same offense" was set out in *Blockburger v. United States,* 284 *U.S.* 299, 303–304, 52 *S.Ct.* 180, 181–182, 76 *L.Ed.* 306, 309 (1932), in which the Court said the following:

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is *whether each provision requires proof of an additional fact which the other does not.*
[ (emphasis added).]

However, in *Illinois v. Vitale,* 447 *U.S.* 410, 420, 100 *S.Ct.* 2260, 2267, 65 *L.Ed.*2d 228, 238 (1980), the Supreme Court reexamined the *Blockburger* test. There the defendant was first convicted of failure to slow his car to avoid an accident. He was then charged with involuntary manslaughter arising from the same incident. After enunciating the *Blockburger* or

"elements" test, the *Vitale* Court also went on to state that "if in the pending manslaughter prosecution Illinois relies on and proves a failure to slow to avoid an accident as the reckless act necessary to prove manslaughter, Vitale would have a substantial claim of double jeopardy under the Fifth and Fourteenth Amendments of the United States Constitution." *Id.* at 421, 100 *S.Ct.* at 2267, 65 *L.Ed.*2d at 238.

The *Vitale* decision has created controversy among state and federal courts over whether the traditional *Blockburger* test has been expanded. A number of jurists have concluded that *Vitale* did not alter the *Blockburger* or "elements" test. *Thigpen v. Roberts*, 468 *U.S.* 27, 104 *S.Ct.* 2916, 82 *L.Ed.*2d 23, 32 (1984) (Rehnquist, J., dissenting); *State v. Zegart*, 452 *U.S.* 948, 951–952, 101 *S.Ct.* 3094, 3096, 69 *L.Ed.*2d 961, 963 (1981) (Burger, C.J., dissenting from denial of *certiorari*); *United States v. Grimes*, 573 *F.Supp.* 1202, 1207 n. 4 (S.D.Ohio 1983); *State v. Timms*, 505 *A.*2d 1132, 1138 (R.I.1986). In their view, an analysis of the actual proofs offered at trial is unnecessary.

We examined the impact of *Vitale* on the *Blockburger* test first in *State v. Dively*, 92 *N.J.* 573 (1983), and then more recently in *State v. DeLuca, supra,* 108 *N.J.* 98. In *State v. Dively,* we concluded that *Vitale* did alter the *Blockburger* test by establishing an additional prong to be met by the defendant seeking to assert a double-jeopardy claim. The defendant in that case had driven his car while intoxicated and caused an accident that resulted in a death. He subsequently pleaded guilty in municipal court to driving while intoxicated, a charge into which reckless driving and failure-to-keep-to-the-right charges had been merged, driving without a license, and driving after license revocation. *Id.* 92 *N.J.* at 576–77. A few months after he was sentenced on those charges, defendant was indicted by a grand jury for death by auto. To this charge he also pleaded guilty, but he reserved his right to appeal the court's denial of his motion to dismiss based on double jeopardy. In construing *Vitale,* we concluded that the defendant needed to: (a) meet the elements or *Blockburger* test; and (b) show that

the same evidence used to establish the first offense was to be relied on to establish the second offense. *Id.* 92 *N.J.* at 581–83. The defendant in *Dively*, we held, met both prongs of the test. *Ibid.*

In *State v. DeLuca, supra,* 108 *N.J.* 98, the defendant, while driving with a blood alcohol content of .21%, struck and killed a pedestrian. *Id.* at 100–01. The issue before the Court was whether defendant's acquittal by a Law Division jury of death by auto, *N.J.S.A.* 2C:11–5, should bar a subsequent municipal-court prosecution under *N.J.S.A.* 39:4–50 for driving while intoxicated (DWI). In *DeLuca* the Appellate Division concluded that although the two charges each required proof of elements not required by the other, and thus passed the *Blockburger* test, the fact that the State would rely on the same proof in both prosecutions barred the second. *Id.* 108 *N.J.* at 101. To this extent, the Appellate Division deviated from *Dively*'s caveat that " '[i]t is only when both prongs are met that double jeopardy applies.' " *Id.* 108 *N.J.* at 106 (citing *State v. Dively, supra,* 92 *N.J.* at 581). Describing *Dively's* requirement that both prongs be satisfied as "erroneous," we concluded that "the more accurate reading of *Vitale* is that it enhanced the protection afforded a defendant facing a second prosecution on the same facts," and, therefore, that the second prong is an "alternative" to the first. *Id.* 108 *N.J.* at 107. *Accord Prohibition of Successive Prosecutions, supra,* 71 Iowa L.Rev. at 351–53, and cases cited therein; Comment, *State v. DeLuca: Reinterpreting Double Jeopardy Protection Against Successive Prosecutions,* 41 *Rutgers L.Rev.* 431, 443–46 (1988).

In *DeLuca*, we thus established that a second prosecution will be barred if either the "elements" test *or* the "evidence" test is satisfied. We said that

the question in the second prong was whether the evidence actually used to establish guilt in the first prosecution is identical to that that will be used in the second, prosecution. If the same evidence used in the first prosecution is the

*sole* evidence in the second, the second is barred. [*Ibid.* (emphasis added) (citations omitted).]

Because it was unclear whether evidence of defendant's intoxication was the sole evidence offered by the State to prove recklessness, a necessary element in the death-by-auto case, we reversed and remanded the case to the trial court for review of the proofs of recklessness in the death-by-auto proceeding. *Id.* 108 *N.J.* at 111.

In applying the two-prong double-jeopardy analysis of *DeLuca* we find that defendant fails to satisfy either the "elements" or "evidence" tests. Hence, we conclude that the subsequent indictment does not violate the double jeopardy clauses of the federal and state constitutions.

We turn first to an examination of the statutory provisions of the offenses. The elements of the offense to which defendant pleaded guilty in municipal court, filing a false police report, are codified in *N.J.S.A.* 2C:28–4b(1), which states:

b. Fictitious reports. A person commits a disorderly persons offense if he:

(1) Reports or causes to be reported to law enforcement authorities an offense or other *incident within their concern knowing that it did not occur;* (Emphasis added.)

The offense of attempted theft by deception, as set forth in *N.J.S.A.* 2C:20–4(a), provides that:

A person is guilty of theft if *he purposely obtains property of another by deception.* A person deceives if he purposely:

a. Creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise; (Emphasis added.)

The charge for arson with the purpose of collecting insurance in violation of *N.J.S.A.* 2C:17–1b(3), states:

b. Arson. A person is guilty of arson, a crime of the third degree, *if he purposely starts a fire or causes an explosion,* whether on his property or another's:

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

(3) With the purpose of collecting insurance for the destruction or damage to such property. (Emphasis added.)

As noted, the *Blockburger* or "elements" test (the first prong), looks to "whether each offense requires proof of an *additional fact* not necessary for the other offense." *DeLuca, supra,* 108 *N.J.* at 106. (Emphasis added). The filing of a false police report is not required for prosecution of theft by deception. Likewise, obtaining the property of another by deception is not required for prosecution of filing a false police report. Similarly arson does not require proof of the filing of a false police report, and the filing of a false report does not require a showing of arson, starting a fire, or causing an explosion. Proof of the filing of a false police report is insufficient in itself to establish the offenses of either theft by deception or arson. The elements of the offenses at issue are not identical or inclusive. Each offense "requires proof of an additional fact which the other does not." *Blockburger, supra,* 284 *U.S.* at 303–04, 52 *S.Ct.* at 181–82, 76 *L.Ed.*2d at 309. Accordingly, the "elements" prong does not bar the subsequent indictment for arson and theft by deception.

Nor is the subsequent indictment barred by the alternative or "evidence" test (the second prong). *DeLuca, supra,* 108 *N.J.* at 107. This test asks us to consider "whether the evidence actually used to establish guilt in the first prosecution is identical to that which will be used in the second prosecution.... If the same evidence used in the first prosecution is the *sole* evidence in the second, the prosecution of the second offense is barred." *Id.* 108 *N.J.* at 105–106 (Emphasis added); *accord State v. Morales,* 224 *N.J.Super.* 72, 82 (Law Div.1987). Hence, to satisfy the "evidence" prong defendant must establish that the evidence actually used to establish his guilt for filing a false police report is the *same* and the *sole* evidence that would be used to prosecute him for the arson and attempted-theft-by-deception offenses. *Accord State v. McGaughy,* 505 *So.*2d 399, 402 (Ala.Crim.App.1987), appeal after remand, 534 *So.*2d 1134 (Ala.Crim.App.1988) (defendant's conviction for D.U.I. precluded subsequent prosecution for assault because D.U.I. constituted *sole* evidence of reckless conduct in second prosecution); *State v. Lonergan,* 16 *Conn.*

*App.* 358, 366–70, 548 *A.*2d 718, 722–23 (1988) (prosecution for operating car while under influence precluded by earlier manslaughter acquittal because evidence relied on in latter was *same* and *sole* evidence to be offered in former), *cert. granted,* 210 *Conn.* 812, 556 *A.*2d 611 (1989).

The evidence used to establish that defendant was guilty of filing a false police report was the filed police report and his admission that it was false because his car was not stolen. This was the only evidence actually before the municipal court when it accepted defendant's plea of guilty to the charge of filing a false police report. This evidence used in the municipal prosecution clearly would not be the sole evidence presented in the arson and theft charges; such evidence would be insufficient to establish that defendant is guilty of those offenses.

Nor does our conclusion change if we consider defendant's gratitious statements to the municipal court after he pleaded guilty but before he was sentenced. See the colloquy, *supra* at 686. No prosecutor would rely on those statements as the sole evidence to establish the third-degree crimes of arson and attempted theft by deception. This is particularly true of a prosecutor who could employ the following additional evidence, none of which was admitted at the municipal court hearing: the fact that defendant's car was burned eight days after the false report was filed (arson was not mentioned by defendant at the municipal court hearing); the testimony of the investigators and firefighters suggesting arson; defendant's sworn statement to the police on March 5, 1985, in which he admitted that he had paid someone named "Andy" to take his car so that he could collect insurance, but in which no mention of arson is made; the "Affidavit of Theft" defendant filed with Allstate; the results of the polygraph examinations; and the testimony of Stewart Kaiser regarding defendant's admission that he had his car burned.

Such additional evidence in and of itself is more than suffi-cient to establish these offenses. Accordingly, it strains credu-lity to argue the State would rely *solely* on the evidence admitted at the municipal court to establish defendant's guilt in filing a false police report to prove arson and attempted theft by deception. Defendant, therefore, is unsuccessful in estab-lishing either the "elements" or "evidence" prongs of the double-jeopardy doctrine with respect to the arson and attempt-ed-theft-by-deception charges. Prosecution of the subsequent indictment, therefore, is not barred under either prong of the *DeLuca* constitutional-double-jeopardy test.

We reject the dissent's interpretation of double jeopardy. Indeed, we find the dissent's contentions to be flawed both as to the facts and the law. As previously set forth, all the offenses—the filing of the false police report, the attempted theft by deception and the arson of the automobile—occurred on different dates and required different proofs. The evidence used to establish the filing of a false police report was neither the same nor the sole evidence that would be used to establish defendant's guilt on the other charges. *Ante* at 694.

The dissent misconstrues our holding in *DeLuca*. The dis-sent alleges that whenever evidence used in an earlier prosecu-tion is used, in part, to help attain a second prosecution, double jeopardy attaches and the latter prosecution is barred. As the dissent proclaims, "[d]ouble jeopardy prevents the recycling of the same evidence ... to gain another conviction." *Post* at 724. Thus, the dissent diverges from our holding in *DeLuca* that the evidence must be both the *same* and *sole* evidence used in the second prosecution. *DeLuca, supra,* 108 *N.J.* at 107.

To support its tortured interpretation of *DeLuca*, the dissent quotes from a passage of that opinion, *Post* at 724, which discusses the comparison of elements. Not surprisingly, this discussion has nothing whatsoever to do with the dissent's double jeopardy analysis; it is a discussion of the *Blockburger* or elements test. For reasons stated earlier, *infra*, at 693, the

dissent could not and does not argue that the elements prong has been satisfied. Rather, it looks to our discussion in *DeLuca* of the elements (*Blockburger*) test to reach a misguided position regarding the evidence test (the second and analytically distinct prong).

Additionally, the dissent's position that the introduction of evidence of a crime for a purpose other than proving the crime in question may result in double jeopardy problems is not only an expansion of our current law on double jeopardy but also provides "excessive protection" to a defendant. *See Prohibition of Successive Prosecutions, supra,* 71 *Iowa L.Rev.* at 381. The following example is cited in that article. A defendant conspires to rob a victim and then rapes and robs her. Evidence of the robbery is introduced in a rape prosecution to rebut the defense of consent. A defendant on trial for rape is obviously not in jeopardy for robbery. Yet, under the dissent's general evidence rule a subsequent prosecution for robbery would be barred. This approach must be rejected because "*Vitale* does not suggest that it is necessarily a constitutional violation to offer the same evidence at a second prosecution." *Flittie v. Solem,* 775 *F*.2d 933, 938 (8th Cir.1985) (en banc) (prosecution for hiding fugitive and helping him to avoid detection not barred by earlier prosecution for conspiracy to commit murder, even though evidence of these activities was introduced at earlier trial, because such conduct was not a "necessary element" of conspiracy charge), *cert. den.,* 475 *U.S.* 1025, 106 *S.Ct.* 1223, 89 *L.Ed.*2d 333 (1986); *cf. United States v. Allen,* 539 *F.Supp.* 296, 310 (C.D.Cal.1982) (question to be considered is whether evidence required to warrant conviction in one prosecution sufficient to support conviction upon the other).

Indeed, as noted, *DeLuca* explicitly rejects the dissent's contention that simply because evidence is used or introduced in one prosecution to help prove an element (or offense), subsequent prosecutions in which that same evidence is introduced are barred. In *DeLuca* we remanded for exactly this reason: we sought a determination of whether evidence besides defen-

dant's intoxication was relied on to prove recklessness in the death by auto case. 108 *N.J.* at 111; see *State v. Samarel*, 231 *N.J.Super.* 134, 138–39 (App.Div.1989).

This aspect of *DeLuca* was acknowledged in a recent Appellate Division decision, *State v. Travers*, 229 *N.J.Super.* 144, 151 (1988). There it was held that double jeopardy did not require merger of convictions for death by auto and driving while intoxicated. The *Travers* court, relying on *DeLuca*, reasoned that in the death-by-auto case the sole evidence of recklessness was not the defendant's intoxication inasmuch as the State's case was "predicated on the defendant's excessive speed or on his intoxication or on a combination of both factors." *Id.* at 151.

Likewise, the dissent's reliance on *State v. Lynch*, 79 *N.J.* 327 (1979), a case that concerns the first situation in which double jeopardy acts as a bar, *see North Carolina v. Pearce, supra,* 395 *U.S.* at 717, 89 *S.Ct.* at 2076, 23 *L.Ed.*2d at 664–65, namely, where a defendant is prosecuted for the same offense after acquittal, is misplaced. In *Lynch* we held that trial court's erroneous dismissal of an indictment was "a judgment of acquittal." Accordingly, we followed the well-established constitutional principle that "if a conviction has been set aside because of insufficient evidence, as distinguished from trial error, the Double Jeopardy Clause prevents a second trial." *Id.* 79 *N.J.* at 341 (citations omitted).

Our holding that double jeopardy does not bar defendant's subsequent prosecution for attempted theft by deception and arson is fully supported by our decision in *DeLuca.* Consider the following paraphrase of the holding in that case:

> If the *same* evidence used in the first prosecution [filing false police report] is the *sole* evidence in the second [attempted theft by deception and arson], the second [attempted theft by deception and arson] is barred. [108 *N.J.* at 107 (emphasis added).]

■ We also reject defendant's argument that his prosecutions for attempted theft by deception and arson are barred by

statutory double jeopardy pursuant to *N.J.S.A.* 2C:1–10a(3). The statute reads as follows:

When prosecution barred by former prosecution for different offense

A prosecution of a defendant for a violation of a different provision of the statutes or based on different facts than a former prosecution is barred by such former prosecution under the following circumstances:

a. The former prosecution resulted in an acquittal or in a conviction as defined in section 2C:1–9 and subsequent prosecution is for:

    \*    \*    \*    \*    \*    \*    \*    \*

(3) The same conduct, unless (a) the offense of which defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent substantially different harm or evil, or (b) the second offense was not consummated when the former trial began.

This statute is patterned after the Model Penal Code's double-jeopardy provision, § 1.09. *See American Law Institute, Model Penal Code and Commentaries,* Part I, 155–56 (1985); *Final Report of the New Jersey Criminal Law Revision Commission,* October, 1971, Vol. I, pp. X, 9–10. *N.J.S.A.* 2C:1–10a(3) is designed to apply in situations where offenses arising from the same course of conduct are not subject to the mandatory joinder rule embodied in *N.J.S.A.* 2C:1–8b. *Model Penal Code and Commentaries, supra,* at 163; Cannel, *TITLE 2C, Comment to N.J.S.A. 2C:1–10a,* p. 51. This is such a case. Infra at 729–34.

*N.J.S.A.* 2C:1–14k states that a disorderly-persons offense is an offense for purposes of statutory double jeopardy. Nonetheless, *N.J.S.A.* 2C:1–10a(3) does not bar defendant's prosecution for theft by deception or arson. This section, like the constitutional-double-jeopardy provision, provides a two-pronged protection for the defendant: prosecutions are barred "if they are based on the same conduct and each offense does not require proof of a fact not required by the other or is *not*

designed to meet a substantially different harm or evil." [3] *Model Penal Code and Commentaries, supra,* at 164. Therefore, "[s]ince both factors must exist to permit successive prosecutions, failure to satisfy either requirement will bar successive prosecutions." *Id.* (footnote omitted).

The defendant in the instant case has failed to satisfy either prong of *N.J.S.A.* 2C:1–10a(3). The first prong is a codification of the *Blockburger* or "elements" test in that it requires that "each charge demands proof of a fact not required by the other." *Model Penal Code and Commentaries, supra,* 162, 163 n. 32 (citing ALI Proceedings 152 (1956)); *accord TITLE 2C, supra,* at 51. As shown, the defendant has not prevailed under the *Blockburger* test with respect to either charge. Further, statutes proscribing arson, theft by deception, and the filing of a false police report are clearly designed to prevent substantially different evils. *See* C. Torcia, *Wharton's Criminal Law,* § 59, 307 (typically where violations of different penal statutes occur, substantially different evils are involved).

Accordingly, we conclude that defendant's prosecution for theft by deception and arson did not violate constitutional- or statutory-double-jeopardy principles.

### III

We conclude, likewise, that defendant's guilty plea in the Livingston Municipal Court to filing a false police report does not require that the subsequent Union County indictment against him be dismissed pursuant to *N.J.S.A.* 2C:1–8(b) and *Rule* 3:15–1(b).

Both *Rule* 3:15–1(b) and *N.J.S.A.* 2C:1–8(b) were enacted in response to *State v. Gregory,* 66 *N.J.* 510 (1975), in which the

---

[3] A small minority of states enacting provisions similar to § 1.09 of the Model Penal Code have, unlike New Jersey, deleted the "substantially different harm or evil" requirement, and thus afforded defendants more limited protection. *See Model Penal Code and Commentaries, supra,* 164 n. 38.

Court enunciated a compulsory-joinder rule. In *Gregory*, we held that "the preparation of the precise contours and details of the compulsory joinder rule" should be left to "our Criminal Practice Committee for ultimate consideration and promulgation." 66 *N.J.* at 522. In the meantime, however, we held that Section 1.07(2) of the Model Penal Code American Law Institute "may be considered in full force and effect in our State." *Ibid.*

Prior to its enactment of *N.J.S.A.* 2C:1–8(b), the Legislature made two changes to the New Jersey Criminal Law Commission's tentative draft of *N.J.S.A.* 2C:1–8(b) that are significant to this case. The term "prosecuting officer" was substituted for the proposed term "law enforcement officer," and the word "criminal" was deleted before the words "conduct" and "episode" and inserted before the word "offenses." The tentative draft read that "a defendant shall not be subject to separate trials for *multiple offenses* based on the same *criminal* conduct or arising from the same *criminal* episode, ... to the appropriate *law enforcement officer*...." (Emphasis added). See *Title 2C, supra,* Comment *N.J.S. 2C:1–8(b) at 26* (1989); *L.*1979, *c.* 178, § 6; *A Review of the Legislative History of the New Jersey Code of Criminal Justice,* 7 Crim.J.Q. 1, 76, § 6 (Summer 1982).

The provision as enacted reads as follows:

*N.J.S.A.* 2C:1–8(b) provides that:

b. Limitation on separate trials for multiple offenses. Except as provided in subsection c. of this section, a defendant shall not be subject to separate trials for multiple *criminal* offenses based on the *same conduct* or arising from the *same episode*, if such offenses are *known to the appropriate prosecuting officer* at the time of the commencement of the first trial and are *within the jurisdiction and venue of a single court.*

(Emphasis added.)

*R.* 3:15–1(b) provides that:

(b) Mandatory Joinder. Except as provided by *R.* 3:15–2(b), a defendant shall not be subject to separate trials for multiple criminal offenses based on the same conduct or arising from the same episode, if such offenses are known to

the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction and venue of a single court.[4]

To invoke the mandatory joinder rule a defendant must satisfy all four of the following criteria: (1) the multiple offenses are criminal; (2) the offenses are based on the same conduct or arose from the same episode; (3) the appropriate prosecuting officer knew of the offenses at the time the first trial commenced; and (4) the offenses were within the jurisdiction and venue of a single court. An examination of the applicable Rule and statute discloses that defendant does not satisfy all of these criteria.

Defendant first contends that all the offenses charged against him are comprehended within the term "multiple criminal offenses" as used in both *N.J.S.A.* 2C:1–8(b) and *Rule* 3:15–1(b). We disagree. Defendant has mischaracterized the nature of the offense required in order to activate mandatory joinder.

The explicit language of *N.J.S.A.* 2C:1–8(b) and *Rule* 3:15–1(b) requires classification of the offense at issue as "criminal" within the meaning of *N.J.S.A.* 2C:1–4. That statutory provision defines a "crime" as "an offense ... for which a sentence of imprisonment in excess of 6 months is authorized." *N.J.S.A.* 2C:1–4(a). In contrast, an offense is a disorderly-persons offense or petty-disorderly persons offense "if it so designated in this code or in a statute other than this code." *N.J.S.A.* 2C:1–4(b). Furthermore, and most importantly for this case, "disorderly persons offenses and petty disorderly offenses are petty offenses and *are not crimes* within the meaning of the Constitution of this State." *Ibid.* (emphasis added).

---

4New Jersey Court Rule *R.* 3:15–1(b) was amended, effective January 1, 1988, to "conform its text with that of *N.J.S.* 1–8(b). According to the Report of the Criminal Practice Committee, *no substantive change was intended.*" (emphasis added). See Pressler, N.J. Court Rules, *Comment R.* 3:15–1(b) (1988); 120 N.J.L.J. Index Pages 137–38 (1987).

We recognize, however, that a defendant convicted of certain petty offenses that are quasi-criminal in nature may be entitled to the same protection as a defendant convicted of a crime. In *Dively, supra,* 92 *N.J.* 573, 585, we noted that "[m]otor vehicle offenses have not been considered to be crimes, but only petty offenses." (citing *State v. Tropea,* 78 *N.J.* 309, 314 (1978); *State v. Macuk,* 57 *N.J.* 1, 9–10 (1970)). We went on to state: "however, the proceedings involving motor vehicle violations in the municipal courts are quasi-criminal in nature." *Dively, supra,* 92 *N.J.* at 585 (citing *State v. DiCarlo,* 67 *N.J.* 321, 327 (1975)). Consequently, motor-vehicle offenses were held to be "within the category of offenses subject to the Double Jeopardy Clause." *State v. Dively, supra,* 92 *N.J.* at 586; *see State v. DeLuca, supra,* 108 *N.J.* at 110–11.

Different considerations and legal analysis, however, are involved in motions to dismiss an indictment on mandatory joinder grounds as opposed to relief from double jeopardy. A double-jeopardy analysis involves a consideration of the elements of the charged offenses and the evidence supporting them. *Supra* at 691–92. The State cannot avoid a constitutional-double-jeopardy problem by claiming that one offense was only a disorderly offense filed by a local police officer. Such considerations, however, are important to a mandatory-joinder issue because the Rule and statute require that charges all be indictable offenses, within the jurisdiction and venue of a single court, and known to the appropriate prosecuting officer. Those prerequisites simply were not established in this case.

The precise parameters of the mandatory-joinder rule are determined by the Legislature. Defendant pleaded guilty in municipal court to filing a false report to the police, a disorderly persons offense, under *N.J.S.A.* 2C:28–4(b)(1). Under the statutory language we do not find this offense a crime. Hence, we find that defendant does not satisfy the first criterion compelling mandatory joinder.

Similarly, we find that defendant does not satisfy the jurisdiction and venue requirements of *N.J.S.A.* 2C:1–8(b) and *Rule* 3:15–1(b). Both the statute and Rule provide that the offenses must be within the jurisdiction and venue of a single court. A municipal court lacks jurisdiction over indictable offenses and offenses that occur outside the municipality. *N.J.S.A.* 2A:8–20; *N.J.S.A.* 2A:8–21. Accordingly, neither the Livingston Municipal Court nor the Essex County Prosecutor had jurisdiction or venue over the indictable offenses of arson or attempted theft that occurred in Union County.

We recognize that a Superior Court may assert "jurisdiction over non-indictable offenses when they are lesser included offenses of the indictable." *State v. DeLuca, supra,* 108 *N.J.* at 111 (citing *State v. Saulnier,* 63 *N.J.* 199 (1973)). *N.J.S.A.* 2C:1–8(d), which requires merger where one offense is included in another, describes an offense as "included" when

(1) It is established by proof of the same or less than all the facts *required* to establish the commission of the offense charged * * *;

(2) It consists of an attempt or conspiracy to commit the offense charged * * *; or

(3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest of a lesser kind of culpability suffices to establish its commission.

[ (emphasis added).]

In the instant matter, (2) and (3) are inapplicable. *N.J.S.A.* 2C:1–8(d)(1) was described in the 1971 Commentary as providing "that a lesser offense is necessarily included in a charge of the greater offense if the proof necessary to establish the greater offense will of necessity establish *every element* of the lesser offense." *New Jersey Code, supra,* at 42; *see, e.g., State v. Queen,* 221 *N.J.Super.* 601, 606–08 (App.Div.), certif. den., 110 *N.J.* 506 (1988); *State v. Jones,* 214 *N.J.Super.* 68, 72–73 (App.Div.1986), certif. den., 107 *N.J.* 102 (1987). Based on the double-jeopardy analysis above, it is evident that not every element of the false police report offense (*i.e.,* the filing of the report) would have been established by the proofs necessary to establish the arson or attempted theft charges.

Therefore, the filing of a false police report is not a lesser-included offense of arson or theft by deception.

As previously noted the Legislature in enacting 2C:1–8(b) specifically narrowed the persons whose knowledge could be imputed to the State in order to trigger the compulsory-joinder Rule by providing that it was not sufficient that a "law enforcement officer" know of the multiple criminal offenses. In order for the Rule to apply, the "appropriate prosecuting officer at the time of the commencement of the first trial" has to know of the multiple offenses.

Here the "disorderly persons" charge against Yoskowitz was filed by Detective Stehlgens of the Livingston Police Department. It appears that no person including any police officer or municipal prosecutor prosecuted the disorderly-persons offense in the Livingston Municipal Court. Likewise, nothing in the record suggests that a prosecuting officer affiliated with the County Prosecutor or the Attorney General was present at the municipal-court proceeding.[5]

In sum, defendant was not subject to separate trials "for multiple criminal offenses." The offenses with which he was charged were not within the jurisdiction and venue of a single court; the local police officer who filed the municipal complaint simply was not the "appropriate prosecuting officer" referred to in the statute and court Rules.

Accordingly, we hold that mandatory joinder pursuant to *N.J.S.A.* 2C:1–8(b) does not bar the subsequent prosecutions.

## IV

■ We are unable, however, to determine from this record whether the doctrine of fundamental fairness bars both or either of the subsequent prosecutions. In New Jersey the

---

[5]Defendant, when he moved to dismiss the indictment, did not request a hearing on whether the Union County Prosecutor had sufficient knowledge of the indictable offenses at the time of the municipal court hearing.

doctrine of fundamental fairness has been an "elusive concept ... [where] exact boundaries are undefinable." Greenberg, *New Jersey's Fairness and Rightness Doctrine*, 15 *Rutgers L.J.* 927, 928 (1984), (quoting *New Jersey State Parole Bd. v. Byrne*, 93 *N.J.* 192, 209 (1983)). For the most part, it has been employed when the scope of a particular constitutional protection has not been extended to protect a defendant. As one commentator has noted, the fundamental-fairness "cases often follow the same pattern: the court identifies a constitutional issue, discusses it, and then declines to reach it, resting its decision instead on fairness and rightness or an earlier fairness decision." Greenburg, *New Jersey's Fairness and Rightness Doctrine, supra,* 15 *Rutgers L.J.* at 928. *But see State v. Godfrey,* 139 *N.J.Super.* 135 (App.Div.) (indictment could be dismissed on either fundamental-fairness or double-jeopardy grounds), certif. den. 73 *N.J.* 40 (1976).

The doctrine of fundamental fairness, at least in the context of double-jeopardy and mandatory-joinder cases, is derived from the policy interests underlying those doctrines. The seminal double-jeopardy case decided on the basis of fairness and the reasonable expectations of the defendant is *State v. Currie,* 41 *N.J.* 531 (1964). In *Currie,* the defendant was stopped by police officers while driving his car. *Id.* at 533. When an officer approached, defendant sped away. *Ibid.* In so doing, defendant struck the officer, struck the police car, and caused a second officer to leap out of injury's way. *Ibid.*

Defendant was subsequently apprehended, charged, and convicted in municipal court for reckless driving and leaving the scene of an accident in violation of the Motor Vehicle Act. *Id.* at 533–34. Over a year later, defendant was indicted and found guilty by a jury of atrocious assault and battery in violation of *N.J.S.A.* 2A:85–5, whereupon he appealed on double-jeopardy grounds. *Id.* at 534–35. The trial court's decision was affirmed by the Appellate Division and by this Court.

Justice Jacobs, writing for the Court, said that the constitutional safeguard against double jeopardy "assures that the State with its great resources will not be permitted to harass and oppress the individual by multiple prosecution or punishment of the same offense. The difficulty arises in determining just when we are dealing with the same offense...." *Id.* at 536. The Court noted "the futility of efforts extended towards the formulation of a single legal test to operate absolutely and inflexibly throughout the field of double jeopardy." *Id.* at 539. Justice Jacobs then said that "[i]n applying the prohibition against double jeopardy, the emphasis should be on underlying policies rather than technisms. *The primary considerations should be fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals.*" *Ibid.* (emphasis added).

In certain of its earlier cases, he added, the results reached were on their facts

> entirely fair and consistent with reasonable expectations * * *. But they never intended to convey that every magistrate's determination, no matter how minor the offense charged before him, will necessarily preclude a subsequent criminal prosecution based in whole or in part on the same activity, no matter how aggravated the crime charged.
> [*Id.* at 541.]

*Currie* went on to emphasize the "relevant practical factors" that "play a vital part in the molding of double jeopardy doctrines." *Id.* at 543. These include the speed with which such violations are generally tried, the extent of the evidential presentation and of the legal representation, and the maximum terms and fines allowable and anticipated by the defendant. *Ibid.* Viewed from the perspective of those factors, the second prosecution was not considered to have involved the "elements of oppression or harassment" or to have violated the reasonable expectations of the defendant. *Ibid.* Rather, barring the second prosecution would have operated "with gross unfairness to the State." *Ibid.*

In *State v. Gregory, supra,* 66 *N.J.* 510, the other leading case to address fundamental fairness in the context of a multi-

ple prosecution, an undercover police officer in Newark purchased heroin from defendant and, while doing so, observed other quantities of heroin in defendant's apartment. *Id.* at 511. After the sale, defendant's apartment was raided on the same day and the other heroin was seized. *Ibid.* Defendant was subsequently indicted and convicted for the single sale of heroin to the officer. *Id.* at 511–12. After conviction but before sentencing, defendant was indicted for possession and possession with intent to distribute the seized heroin. *Id.* at 512. Defendant was subsequently convicted for both those charges.

On appeal the defendant raised double-jeopardy and collateral-estoppel arguments. The Appellate Division set aside the "possession" conviction but affirmed the conviction for possession with intent to distribute. *Ibid.* As in *Currie,* we examined the genesis of double-jeopardy protection and the difficulties associated with the "same evidence" and the "same transaction" tests. *Id.* at 513–18.

After concluding that fairness and the reasonable expectations of the defendant demanded that his prosecutions be joined, we said that "[f]or present purposes we need not rest on constitutional grounds for the just result we seek may readily be attained by our exercise of the broad administrative and procedural powers vested in us by our State Constitution." *Id.* at 518. We then provided for mandatory joinder, stating that "[c]ompulsory joinder ... will not only tend to satisfy the considerations of *fairness and reasonable expectations* stressed in *State v. Currie* but will also promote the considerations of 'justice, economy, and convenience'...." *Id.* 66 *N.J.* at 522. (Emphasis added) (citations omitted).

The notions of fairness and reasonable expectations considered in *Currie* and *Gregory* have been discussed in later cases. See *State v. Tropea,* 78 *N.J.* 309, 315–16 (1978) (fundamental fairness required dismissal of speeding charge after defendant's earlier conviction on same charge was vacated on

708

appeal for failure to produce an essential element of proof). In *State v. Tsoi*, 217 *N.J.Super.* 290 (1987), the Appellate Division, in applying *Currie* and *Gregory*, held that "the elements of harassment and oppression which were the historic object of ... constitutional and common law double jeopardy ..." were not present and allowed the second prosecution. *Id.* at 297.

We do not question the vitality of the fundamental-fairness doctrine. Rather, we find that an inadequate factual record exists to determine whether it is applicable to this case. We are concerned that under the unique circumstances of this case, defendant may have reasonably expected that the subsequent prosecutions would not be brought. Defendant maintains that Detectives Mazur and Stehlgens led him to believe that if he pleaded guilty to filing a false police report, "the whole thing would be 'over' ". Such an assurance especially if it were made with the acquiescence of the Union County Prosecutor's Office, might justify defendant's expectation of finality. Further factual findings, therefore, are required to determine what representations were made to defendant. The court will then be able to determine whether it was reasonable for defendant to rely on such representations in light of the limited disclosures he made to law-enforcement officers.

Although defendant did tell the investigating detectives that he filed the false police report in furtherance of his scheme to defraud his insurance carrier, he failed to make similar disclosures regarding the arson of the car. Therefore, if the trial court finds that such assurances indeed were made to defendant, further inquiry must be made to ascertain whether the detectives, at the time they made such assurances, knew of defendant's personal involvement in the burning of his car.

Likewise the record is incomplete regarding the extent of the Union County Prosecutor's knowledge of the activities of Detectives Stehlgens and Mazur and awareness that indictable charges were pending against defendant. In this latter connection the State claims that while arson may have been suspected,

it was not until Stewart Kaiser's testimony and defendant's polygraph in August that it had sufficient evidence to indict defendant for arson. Nonetheless, depending on its knowledge of the detectives' activities preceding the filing of the complaint in the Livingston Municipal Court, it is not improbable that at the time of the municipal court hearing the Union County Prosecutor's Office may have had plans to prosecute defendant for the indictable charges.

We have encouraged "cooperation between municipal courts, municipal prosecutors, and county prosecutors." *State v. Dively, supra,* 92 *N.J.* at 589. This policy was reinforced and the conflicts between municipal-court and Superior Court jurisdiction eased in *State v. DeLuca,* where it was held that a Superior Court judge should preside as such over a death by auto case while trying the lesser offenses simultaneously as a municipal court judge. *See State v. DeLuca, supra,* 108 *N.J.* at 111.

Applying this policy of cooperation to the case at bar, if the Union County Prosecutor's Office knew or should have known that prosecutions for the related indictable offenses would be instituted in the near future, no complaint should have been filed in the municipal court, or if filed, the hearing should have been suspended until all the charges could be heard together. Since the record is unclear in this regard, we remand to the trial court for a determination of the extent of the Union County Prosecutor's knowledge of: (a) the probability of future prosecutions for either of the indictable offenses; and (b) the plans of Detectives Mazur and Stehlgens to prosecute defendant in municipal court.

We do not retain jurisdiction. Based on its findings the trial court will decide whether the dictates of the doctrine of fundamental fairness have been transgressed in the instant case.

## V

In conclusion, we find that the subsequent indictments were not barred by double jeopardy. Not only was there no identity

of the elements of the offense, but also the evidence used to establish the "false police report" offenses clearly would not be the identical or sole evidence required to establish the arson and theft by deception offense.

Mandatory joinder, as set out in *N.J.S.A.* 2C:1–8(b) and *Rule* 3:15–1(b), also does not bar the second prosecution. Although arguably the offenses arose from the "same episode" and the prosecutions did not involve "multiple criminal offenses" as required, and the offenses were not within the jurisdiction and venue of a single court.

We remand to the trial court to determine whether the principles of fundamental fairness and reasonable expectations apply in this case.

Accordingly, the judgment of the Appellate Division is reversed and the cause remanded for further proceedings consistent with this opinion.

POLLOCK, J., concurring.

I concur in the opinion of the Court except for the following differences with the Court's double-jeopardy analysis. The Court correctly concludes that in *State v. DeLuca*, 108 *N.J.* 98, 107 (1987), we established that a second prosecution will be barred if either the "elements" test *or* the "evidence" test is satisfied. In *DeLuca*, the issue was whether the sole evidence of recklessness in a death-by-auto prosecution was intoxication. If so, it would have barred a subsequent prosecution for driving-while-under-the-influence. *Id.* at 108–09. The reason is that the evidence of intoxication in the first prosecution would have been the sole evidence in the second prosecution. When evidence used to establish an element of the first offense is the sole evidence of an element of the second offense, prosecution of the second offense violates double jeopardy.

In my opinion, *DeLuca* should not be read as necessarily requiring that to satisfy the "evidence" test the same evidence used in the first prosecution must be the *sole* evidence in the second. That indeed was the factual setting in *DeLuca*, but I

believe the holding of that case should also apply if the same evidence used in the first prosecution is the sole evidence of an *element* of an offense in the second prosecution. Thus, in *State v. Dively*, 92 *N.J.* 573, 583 (1983), we found that a subsequent prosecution for death-by-auto should have been barred because the sole evidence of the element of recklessness in that prosecution was the evidence of intoxication that provided the basis for the earlier prosecution for drunk driving. Similarly, in *State v. Churchdale Leasing, Inc.*, 115 *N.J.* 83, 106–07 (1989), a case involving multiple punishment, not multiple prosecutions, we concluded that the imposition of multiple punishment violated the double-jeopardy clause because the same evidence was used to prove an element of two different motor vehicle offenses. Evidence that defendant's vehicles weighed over 80,000 pounds was needed to prove not only that the defendant operated its vehicles above the gross weight allowed by law, an element of *N.J.S.A.* 39:3–84b(4), but also that it operated them above their registered weight, an element of *N.J.S.A.* 39:3–20. *See also* Thomas, *Prosecution for the Same Offense: In Search of a Definition*, 71 *Iowa L.Rev.* 323, 397 (1986) (discussing how *Vitale* established two-prong double-jeopardy test and providing that the "necessary element test [described in *DeLuca* as the "evidence test"] asks whether both prosecutions require proof of the same conduct as an essential element.").

In sum, I believe that *DeLuca* should be read as barring a second prosecution not only when the same evidence in the first trial is the sole evidence of the second offense, but also when the same evidence in the first trial is the sole evidence of an element of an offense in the second prosecution. With that qualification, I join the opinion of the Court.

GARIBALDI, J., concurring in part and dissenting in part.

I concur with the Court that defendant's subsequent indictments charging arson and attempted theft by deception are not

barred by double jeopardy or the mandatory-joinder rule. However, I would hold that defendant's subsequent indictments are also not barred by the doctrine of fundamental fairness. I dissent, therefore, from the Court's decision to remand the case to determine if this doctrine is applicable.

Fundamental fairness is a doctrine to be sparingly applied. It is appropriately applied in those rare cases where not to do so will subject the defendant to oppression, harassment, or egregious deprivation. However, *State v. Currie*, 41 *N.J.* 531, 541 (1964), and its progeny were "never intended to convey the thought that every magistrate's determination, no matter how *minor* the offense charged before him, will necessarily preclude a subsequent criminal prosecution based in whole or in part on the same activity, no matter how aggravated the crime charged." Here defendant could not have reasonably expected that his pleading guilty to a disorderly-persons offense in exchange for a lenient sentence would preclude subsequent prosecutions for the indictable offenses of attempted theft by deception and arson.

Defendant's case is easily distinguishable from *State v. Gregory*, 66 *N.J.* 510 (1975), where defendant was prosecuted twice, based on offenses that occurred the same day, that were known at the time of the initial prosecution by the appropriate prosecuting authority, which had proof of both offenses and the ability to try them within the same jurisdiction and venue. Here, the operative facts occurred weeks apart, were not shown to have been known by the appropriate authority at the time of the first prosecution, and were not within the venue and jurisdiction of a single court. Indeed, the record supports the conclusion that at the time of the municipal hearing, investigation of the indictable offenses was ongoing. It was not until four months after the municipal conviction, in July, that evidence linking defendant to the arson offense developed, namely, Stewart Kaiser's statement and the results of defendant's polygraph test. The State's claims are supported by the fact that

the indictments were not issued until after receipt of Kaiser's statement and the polygraph test.

Moreover, the Livingston police complaint simply alleged that Yoskowitz had falsely reported to the police that his car had been stolen. Nothing in that complaint stated that defendant was attempting to defraud the insurance company or that defendant knew that his car was to be burned. The municipal-court offense was not a lesser-included offense of the more serious offenses. Neither the elements nor the evidence of the subsequent charges of arson or attempted theft by deception were identical to or inclusive of the elements or evidence necessary to establish the municipal-court offense of filing a false police report. From the evidence and complaint before the municipal court when it took defendant's plea, there was nothing to alert it that the complaint should have been referred to the Union County Prosecutor.

Nor do I find that defendant's colloquy with the municipal court was sufficient to place the municipal court on notice that the incident involved indictable offenses committed in another county. A defendant appearing in a municipal court on a disorderly-persons offense should not be permitted, by gratuitously informing the court of facts unnecessary to establish the disorderly offense, to foreclose a subsequent indictment on the more serious offenses.

Even assuming that the defendant expected this information to have such an effect, such an expectation was unreasonable. Defendant was not forthcoming with respect to his role in the burning of the car. Defendant made absolutely no mention of arson in his written March Fifth statement or his colloquy in the municipal court. Hence, it is difficult to believe that he reasonably expected that a guilty plea to filing a fictitious police report would bar his subsequent indictment for attempted theft and arson. Furthermore, defendant suffered no serious injuries or egregious deprivation. Defendant's municipal court proceedings were brief, he was not represented by coun-

sel, and very little evidence was introduced. At most defendant suffered a minor inconvenience in appearing at municipal court. In this case, the "oppression or harassment historically aimed at by the constitutional and common law prohibition are not significantly involved ..." *Currie, supra,* 41 *N.J.* at 543.

To avoid double-jeopardy problems, and to provide a more effective, orderly proceeding, I too continue to urge a policy favoring "cooperation between municipal courts, municipal prosecutors, and county prosecutors." *State v. Dively,* 92 *N.J.* 573, 589 (1983). I note that the Supreme Court Committee on Criminal Practice in its 1988 Report proposed a new *Rule,* 3:15–3(a)(1), which provided for the compulsory joinder of "any pending non-indictable complaint for trial with a criminal offense based on the same conduct or arising from the same episode." 122 *N.J.L.J.* Index pages 116–17 (1988). The proposed *Rule* 3:15–3(3)(c) also stated that "[f]ailure to join as required in paragraph (a) shall not bar a subsequent prosecution ... unless the bar is required by statute" or the Constitution, or the prosecuting attorney knew of the other prosecution but failed to apprise the court of its existence. The Committee withdrew the proposed Rule. I urge the Committee to continue its work in this area.

Nonetheless, even if the Rule had been enacted, the indictments in the instant case would not be barred. As shown, there is no violation of the constitutional or statutory double-jeopardy provisions, nor has the statutory mandatory-joinder rule been transgressed. Likewise, there was no prosecuting attorney in municipal court who could have known that there would be later prosecutions of defendant. The majority curiously attaches significance to the latter point in its discussion of mandatory joinder, *ante* at 702, yet ignores it in its analysis of fundamental fairness.

I recognize that it is particularly onerous to require coordination and cooperation between two municipal police departments located in different counties. The two officers involved in the

investigation of defendant, Stehlgens and Mazur, were, respectively, from the Livingston and Union Police Departments. The offenses were committed on different dates, in different municipalities located in different counties, and were not easily recognizable as related crimes. There is no allegation of bad faith or animus on the part of the law-enforcement officers. This is not a case, therefore, in which different investigators within the same county-prosecutorial agency were involved in related matters but failed properly to coordinate their activities. While I continue to encourage coordination between law-enforcement agencies where, as here, the requirements of double jeopardy and mandatory joinder have not been transgressed, I do not find that the treatment of defendant was fundamentally unfair. Indeed, to hold otherwise would be fundamentally unfair to the State.

Hence, I would hold that the principle of fundamental fairness and reasonable expectations does not apply in this case. Defendant did not suffer any egregious deprivation and could not have had any reasonable expectation that pleading guilty to a "disorderly persons" charge would result in the disposition of the more serious criminal offenses.

Accordingly, I would reverse the judgment of the Appellate Division but would not remand the case to determine whether the principles of fundamental fairness and reasonable expectations apply.

HANDLER, J., dissenting.

In this case, as the majority states, the Court is dealing with a defendant, who "arranged to have his automobile stolen so that he could collect insurance." *Ante* at 682. By his own admission, corroborated by extraneous circumstances, defendant implicated himself in a criminal scheme that involved the contrived theft and destruction of his automobile and the filing of a false police report and insurance claim for the purpose of collecting the proceeds of insurance on the automobile. The

defendant thus clearly exposed himself to criminal prosecution for several offenses arising out of essentially a single criminal episode. Armed with solid evidence of two of these offenses—those involving the filing of false documents to defraud the insurance company—and enough evidence to engender strong suspicion of a third offense—the arson of the car—the State accepted the defendant's guilty plea for the offense of filing a false police report. The evidence that was presented to support this guilty plea was the filing of false reports both with the police and the insurance carrier in order to collect insurance for the faked loss of the car.

Thereafter, as noted by the Court, the State proceeded to indict defendant for both attempted theft by deception—this based on the pre-existing evidence of defendant's false claim to collect insurance—and third-degree arson—this based on evidence that defendant was connected with the actual destruction of the car following its contrived theft. The defendant, while objecting to being subjected to continuing prosecution following his earlier conviction for filing a false report, entered a plea bargain involving these charges under which he pled guilty to the theft in exchange for the dismissal of the charge of arson.

The Court now countenances this multiplicity of prosecutions and convictions notwithstanding the indisputable fact that the charges underlying the two successive guilty pleas are based on the same evidence and that the outstanding charge of arson is based on evidence that was or could have been available when defendant was initially prosecuted.

The principal reason advanced by the majority in sustaining multiple prosecutions of the defendant appears to be its determination that defendant had no reasonable expectation based on his initial guilty plea to the filing of a false police report that he would not be exposed to subsequent criminal sanctions for the crimes of attempted theft by deception and third-degree arson. The majority, however, imputes to the defendant "reasonable expectations" that are unwarranted by this record and

are inconsistent with principles of double jeopardy and fundamental fairness.

Specifically, the majority's view of the record and its conclusion can be challenged because: (1) the State had sufficient evidence and knowledge to bring the theft-by-deception charge at the time it charged defendant with filing a false police report; the State in fact made use of the same factual evidence in obtaining the convictions on the theft-by-deception charge and the filing-of-the-false-police-report charge; (2) the State had sufficient evidence and knowledge to suspect defendant of involvement with the arson, and, therefore, the State should have borne the burden of either investigating the arson in order to bring all charges relating to the single scheme at the same time, or, if that were not possible, the State should have explained clearly to defendant at the time of his earlier exposure to criminal jeopardy that if it were found later that he was involved with the plan to commit arson to any extent, he remained at risk of further prosecution; (3) differences between the respective jurisdictions governing the disorderly persons offense of filing a false police report and the criminal offenses of arson and theft by deception are not determinative in assessing the fairness of successive prosecutions or defendant's reasonable expectations regarding the disposition of multiple charges; fundamental fairness requires in such circumstances that the State coordinate law-enforcement activities involving a single defendant for a single criminal episode; and (4) protection of a defendant's "reasonable expectations" under the doctrine of fundamental fairness is not "spare" (*ante* at 705, nor is a showing of "serious injury" or "egregious deprivation" necessary (*ante* at 707) to prove the violation of protectable rights under this doctrine; instead, fundamental fairness protects against arbitrary governmental action in the form of fragmented multiple prosecutions that result in unjustified harassment, vexation, anxiety, or expense to individual defendants.

I am impelled by these considerations to differ from the Court's reasoning. I can agree with the Court that the defendant's subsequent prosecutions are not barred by our current rule on mandatory joinder. Under the circumstances, however, we cannot sanction penal consequences that are violative of double jeopardy and principles of fundamental fairness. I therefore dissent.

## I.

The facts are largely undisputed. The significance of the facts and the inferences to be drawn, however, are not. I begin therefore with a slight restatement of the facts in order to demonstrate and emphasize that at the time that defendant was charged with filing a false police report, the police had sufficient knowledge to charge defendant with attempted theft by deception, and to suspect and investigate him for arson. Indeed, as the Appellate Division states, and as I read the record, "[t]he burning of the car triggered further police action on his theft report, and the theft report alerted the prosecution to the possibility that burning the car was one step in a scheme to defraud the insurance company." 224 *N.J.Super.* 375, 382 (1988).

It was only after the car was discovered completely burnt that the police in both Livingston and Union County (Livingston is where defendant filed the false police report, Union is where the car was found burnt) first suspected defendant of attempting to defraud the insurance company. On discovering the suspected arson, the Livingston Detective immediately informed Allstate that the car had been found completely burnt and that arson was suspected. The detective then learned that defendant had filed a claim with the insurance company. Allstate's records show that where Allstate recorded this police report, they also made a notation not to pay defendant, obviously also suspecting defendant of fraud related to the suspected arson.

The investigators from both Union County and Livingston proceeded to call defendant into the Union County police station for questioning, upon which defendant admitted that he "was looking for the insurance money." Although defendant had been called into the Union County police station, the Livingston police ultimately signed the complaint relating to the filing of the false police report. The Union County police then retained responsibility for investigating the arson.

Allstate's records contain a further notation, dated only one day after defendant made his confession to the police, which states that the Union County Detective called Allstate to tell them that he had a statement from the insured "saying he had someone burn his car for him." This notation is confusing in that there is no other evidence in the record showing that defendant had made this admission of knowing the car would be burnt at this early date. However, it does suggest that at least the Union County police at this time had suspected him of participating in the arson of his car. Nevertheless, the State refuses to acknowledge that defendant was under suspicion for involvement in the arson at this time, and instead claims it did not have sufficient facts to *prosecute* defendant on the arson charge until months later when a Mr. Stewart Kaiser came in to tell them defendant had admitted to knowledge of the arson.

These facts demonstrate that at the time of defendant's initial guilty plea, the investigators jointly had sufficient knowledge to charge defendant with both filing the false police report and theft by deception, and to suspect and therefore to conduct further investigation into his involvement in the arson.

Further, it is readily inferable from these circumstances that defendant could reasonably expect that the entire matter encompassing his criminal liability for this incident would be addressed and disposed of when he was prosecuted and pled guilty to the initial charge of filing a false police report. First, when he made his initial statement to the police and then provided a factual basis in open court in support of the plea, the

entire criminal episode was implicated. Defendant's statement to the police reads, "I told Andy I was looking for the insurance money." Defendant, therefore, made it perfectly clear that his underlying motive behind the filing of the false police report was to collect on a fraudulent claim to the insurers. Second, in his plea he stated, "I talked to some guy and I gave him some money to take the car. I just, I guess I wanted to collect on the insurance." Third, at that time, he knew that the police of both jurisdictions were aware of his submission of a false claim to the insurance company. Finally, at defendant's plea hearing, the sentencing judge specifically elicited this information and clearly understood that defendant's purpose was to defraud the insurance company. In imposing sentence, the court considered defendant's purpose and then gave defendant the distinct impression that he would be treated leniently this time for this scheme, but if he attempted any other misdeeds, he could expect to go to jail. This is what the court said:

> You were going to beat the insurance company? Is that what you did? You were going to report it stolen, have your buddy take it away and then try and collect from your insurance carrier.
>
> \*    \*    \*    \*    \*    \*    \*    \*
>
> I'll tell you what I'm going to do, Mr. Yoskowitz. Since I have nothing before me to contradict your statement that this is the first offense i'll (sic) give you another bite at the apple. I almost always do with first offenders.... Your future is going to be in your hands because I am going to place you on probation. If you violate the probation you're going to jail. You're not going to pass go and you're not going to collect $200., you're going straight to the can. If you come back before me and plead guilty or be found guilty of any other offense you're going to jail. All you have to do is keep your nose clean and stay out of trouble ... and you'll be allright (sic).

It is obvious that the court did not anticipate that defendant would be subjected to further prosecution arising from this criminal episode. It is just as obvious that defendant himself would reasonably believe that he would get in no further trouble related to this single scheme.

When defendant was later charged with attempted theft by deception and arson with the purpose of collecting insurance, he entered a plea agreement in which he pled guilty to the theft

charge in exchange for the State dropping the arson charge. However, no one suggests that defendant in any sense acquiesced in these successive prosecutions or waived his objections to them. Thus, this sequence of events poses squarely the issues of whether, as a result of the earlier plea to filing a false police report, double jeopardy and fundamental fairness bar a subsequent prosecution for either of the subsequent charges.

## II.

The Court finds no double jeopardy obstacle to a subsequent prosecution in this case. I disagree. In my opinion, double jeopardy bars the second prosecution on attempted theft by deception. This result is dictated under the same-evidence test of *State v. Dively*, 92 *N.J.* 573 (1983), which was further interpreted by *State v. DeLuca*, 108 *N.J.* 98 (1987). This test involves an examination of whether a subsequent conviction is based on the same evidence that was used in obtaining the prior conviction.

In this case the Court's description of the evidence that was actually used in the municipal court proceeding, however, is misleading: "The evidence used to establish that defendant was guilty of filing a false police report was the filed police report and his admission that it was false because his car was not stolen. This was the only evidence actually before the municipal court when it accepted defendant's plea of guilty to the charge of filing a false police report." *Ante* at 694. To the contrary, the record discloses that this was not the only evidence used: when the trial court obtained the factual basis for the initial plea, defendant's admission also included the fact that the reason he filed the false police report was that he "wanted to collect on the insurance." *Ante* at 694. This admission did not constitute merely "gratuitous" statements, *ibid.*, but constituted probative and relevant "evidence" of his intent.

Moreover, this evidence actually constituted the factual basis used by the court to accept the plea and thus determine defendant's guilt. It was considered by the trial court in accepting defendant's guilty plea, it was a basis for the court's determination of guilt, and it assuredly was considered by the trial court in the imposition of sentence. A fact-based determination that adjudicates criminal liability invokes the protections of double jeopardy regardless of whether there is legal error. *See State v. Lynch,* 79 *N.J.* 327 (1979) (judgment of acquittal based on prosecutor's opening statement reciting evidence that would be insufficient to support criminal charges raises double jeopardy bar to second prosecution).

The operative test for applying double jeopardy is explicated by our decisional law. In *State v. Dively, supra,* 92 *N.J.* at 581, the Court held that the double jeopardy test is "two-pronged" and involved both a "same elements" and "same evidence" test. The "same elements" test is satisfied when the lesser-included offense proved also establishes an essential component of a greater offense, and proof of the greater offense would also establish the lesser offense; the "same evidence" test is satisfied when the evidence used to establish the initial offense is also relied on to prove the subsequent charge. *Id.* 92 *N.J.* at 581–82.[1]

*State v. Dively,* however, was later amended by *State v. DeLuca, supra,* 108 *N.J.* 98, because *Dively* had suggested the

---

[1] In *Dively, supra,* 92 *N.J.* 573, the Court held that where a defendant had pled guilty to drunk driving, which included findings of the merged offenses of reckless driving and failure to stay right, double jeopardy barred subsequent prosecution for causing death by auto, arising out of the same incident. The Court found both prongs had been met: (1) the "same elements" prong had been met because the prosecutor had proved an essential element of the greater offense; proving death by auto necessarily *includes* a finding of reckless driving, and since the prosecutor had established reckless driving, the prosecutor needed only to prove the additional element of resulting death to establish death by auto; (2) the "same evidence" test had been met because the same evidence to establish drunk driving—namely, reckless driving and failure to keep right—would also be used to prove death by auto. *Id.* at 582–83.

two tests were cumulative in that both must be satisfied to invoke double jeopardy. Instead, *DeLuca* held that the two tests were *alternative* tests, either of which could provide a double jeopardy bar against a subsequent prosecution. *Id.* 108 *N.J.* at 107. The Court in *DeLuca* further refined the same evidence test. It said: "[The same evidence test] is a new test based on the evidence actually adduced in the first prosecution. . . . it enhance[s] the protection offered a defendant facing a second prosecution on the same facts." *Id.* at 107.[2]

Therefore, following these two decisions, the appropriate question is whether the evidence used to support defendant's plea to the charge of filing a false police report is the same that was used to find defendant guilty of third-degree theft by deception. As noted earlier, a fair reading of the record forcefully demonstrates that the same evidence was used. *Supra* at 721–22.

To escape this conclusion the majority reinterprets our case law by narrowing the *DeLuca* standard. The Court in *DeLuca* did not purport to change the earlier formulation of the same evidence standard that had been earlier adopted in *Dively*.

---

[2]In *DeLuca,* the Court found that a driving while intoxicated charge would be barred by an acquittal on a death-by-auto charge provided the prosecutor's only evidence of recklessness to support death by auto was defendant's alleged intoxication. The Court found that the same elements test was not satisfied because the element of "recklessness" is subject to many possible meanings, such as "failure to slow" or "driving while intoxicated." For example, an acquittal on the element of recklessness involving failure to slow did not necessarily reach alternative factual bases for finding reckless death by auto, such as proving the defendant was driving while intoxicated. After a narrowing of the elements of the offense to the facts relevant to the charge, the same evidence test can be used to determine whether the evidence used to prove the first offense will be unconstitutionally relied on to prove the second. 108 *N.J.* at 110. Hence, the Court stated that if other evidence relating to defendant's recklessness was adduced at the trial on death by auto such that the acquittal was not dispositive on a finding of defendant's intoxication, then defendant was not protected on double jeopardy grounds from having the issue of his intoxication examined again. *Id.* at 111.

Rather, it held that this standard constituted an alternative, rather than a cumulative test of double jeopardy. Thus, according to *Dively* and *DeLuca*, the same evidence test is "whether the evidence actually used to establish guilt in the first prosecution is identical to that that will be used in the second prosecution." *DeLuca, supra,* 108 *N.J.* at 105–106 (paraphrasing *Dively* ).

In applying this standard, the Court in *DeLuca* further observed that "[i]f the same evidence used in the first prosecution is the sole evidence in the second, the prosecution of the second offense is barred," *ibid.*, and indicated, with respect to the facts before it, that, "[i]f the State relied solely on intoxication as evidence of recklessness in the death-by-auto case [the first case], double jeopardy would bar the DWI prosecution [the second case]." *Id.* at 109.

The majority construes these passages to reinterpret the same evidence test to mean that only if the evidence actually *necessary* to support the initial conviction is also *necessary* to support the second prosecution will double jeopardy apply. To put it somewhat more clearly: only if the evidence actually used to support both convictions is *necessary* to establish both will double jeopardy bar the second prosecution. Therefore, the majority reasons to two conclusions: (1) if evidence used to prove an initial offense is unessential or unnecessary to prove that offense, that evidence can be used again to prove the second offense; and (2) if evidence used in the first prosecution is unnecessary or unessential with respect to its use in proving a second offense, its prior use in an earlier prosecution will not trigger jeopardy if used again in the second. This is the sense of the Court's assertion that with respect to the second prosecution "[because there existed additional evidence which was] in and of itself ... more than sufficient to establish [theft by deception], ... it strains credulity to argue that the State would rely solely on the evidence admitted at the municipal court to

establish defendant's guilt in filing a false police report to prove ... attempted theft by deception." *Ante* at 695.

In its recasting of the same evidence test, the Court ignores *DeLuca*'s summary of the appropriate standard, which is whether the evidence marshalled to support both prosecutions is the *same*. Hence, as long as the evidence is the same or "identical," it does not matter that some of the evidence in one prosecution may be more or less probative than in the other, or is essential in one and cumulative or superfluous in the other, or relevant to substantive criminal liability in one but only to credibility in the other. *DeLuca* makes it clear that it is immaterial whether an additional fact is required to be proved for either offense when the same evidence is actually used to prove both offenses.[3]

It is problematic whether the Court's reformulation of the same evidence test squares with the federal experience which it purports to follow. This test was first enunciated in *In re Nielsen*, 131 *U.S.* 176, 188, 9 *S.Ct.* 672, 676, 33 *L.Ed.* 118 (1889), in which the United States Supreme Court approached the problem of double jeopardy by asking whether "the evidence required to warrant a conviction upon one of the [prosecutions] would have been sufficient to support a conviction upon the other." *In re Nielsen* involved a defendant who was initially convicted of unlawfully cohabiting with two wives, and then subsequently was convicted of adultery involving one of those wives. The Court found that the evidence required to prove the first prosecution was sufficient to support the second, even if

---

[3]*DeLuca* explained this point as follows:

> Comparing the elements of the statutory offenses in their abstract form is virtually meaningless: a death-by-auto statute that requires recklessness will never specifically include failure to slow as a lesser included offense.... A court considering double jeopardy would narrow the elements of the offense to include only the alternatives or meanings relevant to the particular case. After that narrowing process has been completed, the statutory elements, as narrowed, can be compared.... [108 *N.J.* at 110]

the elements of the crimes were different (adultery required proof of sexual intercourse while unlawful cohabitation did not). *Id.*, 131 *U.S.* at 188, 9 *S.Ct.* at 676.

Later federal decisions enunciated the "same evidence" test in the same way: whether the evidence necessarily used by the State in the first charge would suffice to establish the second. *Jordan v. Com. of Va.*, 653 *F.*2d 870, 874 (4th Cir.1980) ("[a]na-lysis of the proof in the instant case similarly reveals that the evidence necessarily used by the government in prosecuting the earlier misdemeanor charge would totally have sufficed to sustain the later felony conviction."); *United States v. Sabella*, 272 *F.*2d 206, 212 (2d Cir.1959) (defendant may not later be tried again on same fact situation, where no significant additional fact *need* be proved, even though he is charged under a different statute).[4]

The test has engendered some dispute as a matter of federal law. *See* Thomas, "The Prohibition of Successive Prosecutions for the Same Offense," 71 *Iowa L.Rev.* 323, 363–63 (1986) (hereinafter "Successive Prosecution"). In *Illinois v. Zegart*, 452 *U.S.* 948, 101 *S.Ct.* 3094, 69 *L.Ed.*2d 961 (1981), a defendant, who drove her car over a median and killed two passengers traveling in an oncoming vehicle, first pled guilty to crossing a median, and then was subsequently charged with reckless manslaughter arising out of the same incident. A divided state court affirmed a double jeopardy bar to the second prosecution, reasoning that the same factual basis would be

---

[4]In *Jordan,* the case involved an initial misdemeanor conviction for obtaining a controlled substance with a forged prescription and a subsequent felony conviction for possession of a controlled substance. The court found the sole evidence used in the first conviction would suffice to support the second conviction. In *Sabella,* the defendant had been initially charged with selling heroin without a written order, and then subsequently charged with selling illegally imported heroin. The Court found that the "self-same" evidence needed to prove the first indictment could sustain the second indictment.

used in both.[5]   The Supreme Court denied *certiorari*, permitting the double jeopardy bar to stand.

In *Rivera v. Ohio*, 459 *U.S.* 957, 103 *S.Ct.* 271, 74 *L.Ed.*2d 211 (1982), however, the Supreme Court took an opposite turn. This case involved a defendant who, at knifepoint, took a victim's motorcycle, along with its title and some cash.   After this defendant pled guilty to receiving stolen property, he was then charged with aggravated robbery.   The State Supreme Court allowed the subsequent prosecution and the Supreme Court denied the petition for *certiorari*.   Justices Brennan and Marshall, however, dissented, arguing that this clearly violated the same evidence test of *Vitale* because in order to prove aggravated robbery, the State would have to prove every fact necessary in convicting defendant for the first crime of receiving stolen property.[6]

---

[5]This mirrored very closely the analysis used in *Illinois v. Vitale*, 447 *U.S.* 410, 100 *S.Ct.* 2260, 65 *L.Ed.*2d 228 (1980), in which the United States Supreme Court held that if the element of recklessness in the second proceeding were based on failure to slow, and failure to slow had already been proved in the first proceeding, the second prosecution was barred.   Similarly, the State Supreme Court found in the above case (*Illinois v. Zegart*) that if the recklessness in the second prosecution depended on proving the defendant illegally crossed a median, and that had been proved already in the first proceeding, the second prosecution would be barred.   Although the Supreme Court denied the petition for certification, Justices Burger, Blackmun, and Rehnquist dissented, denying that *Vitale* ever created a "same evidence" test as an alternative to the same elements test.   *Id.*, 101 *S.Ct.* at 3096.   *But see* "Successive Prosecutions" at 362–63 (arguing Justice Rehnquist misanalyzed previous case law in order to arrive at this conclusion).

[6]In another case in which the Supreme Court denied *certiorari, Thigpen v. Roberts*, 468 *U.S.* 27, 104 *S.Ct.* 2916, 82 *L.Ed.*2d 73 (1984), the majority declined to decide the case on the "same evidence" test, finding instead evidence that gave rise to a presumption of prosecutorial vindictiveness in bringing the second prosecution; Justice Rehnquist dissented, however, because he believed the Court was misguided in not reviewing the double jeopardy question.   He then took the opportunity of dissenting to restate his theory that the "same evidence" test does not exist.   Nevertheless, our Court in *DeLuca* rejected this approach and decided a same evidence test does exist as an alternative to the same elements test.   *See also* "Successive Prosecutions" at 362–63 (arguing

The Supreme Court's latest word on the same evidence test came in *Borchardt v. United States*, 469 *U.S.* 937, 105 *S.Ct.* 341, 83 *L.Ed.*2d 276 (1984), in which it held that where a defendant had been convicted of a conspiracy to import marijuana, the State was not barred from subsequently prosecuting defendant based on the same evidence for smuggling large sums of currency out of the country in furtherance of an illegal scheme, the underlying scheme being the already-proved illegal smuggling of marijuana. The Supreme Court affirmed, again with a dissent by Justices Brennan and Marshall, who argued that the same evidence test was definitely satisfied and should have barred the second prosecution.

However, under the federal doctrine, which has already enunciated a "same evidence" test as separate and distinct from a "same elements" test (*In re Nielsen, supra*, 131 *U.S.* 176, 9 *S.Ct.* 672, 33 *L.Ed.* 118; *Jordan v. Com. of Va., supra*, 653 *F.*2d 870; *United States v. Sabella, supra*, 272 *F.*2d 206), the relevant question in this case would be whether the evidence in the second prosecution (the filing of the false insurance claim and defendant's admission of his intent to defraud the insurer) was "necessary" to establish the first prosecution (the filing of the false police report). The majority argues that insofar as this evidence proves only defendant's intent to defraud, it was not "necessary" to prove the defendant filed a false police report. However, the record inescapably demonstrates that it was definitely relied on in the first proceeding in which defendant was convicted for filing a police report and, therefore, this evidence was necessarily used. *See Jordan v. Com. of Virginia, supra*, 653 *F.*2d at 874 (same evidence test applied to all evidence necessarily used in the first prosecution). Furthermore, intent to defraud was clearly probative of knowledge or motive in establishing that defendant filed the false police report, and was actually used for this purpose. *See Evid.R.* 55.

---

again that Justice Rehnquist's denial of a separate same evidence test rests on an inaccurate characterization of previous case law).

Another question posed by the federal approach is whether the same evidence necessary in the first prosecution was sufficient to prove the second. As noted, the majority and concurring opinions express the view that the question is whether such evidence is *necessary* in the second prosecution. *Ante* at 728. However, this is not supported by the federal enunciation of this test, as discussed above, which explicitly states the evidence need only be *sufficient*. *See, e.g., In re Nielsen, supra,* 131 *U.S.* at 188, 9 *S.Ct.* at 676; *Jordan, supra,* 653 *F.*2d 874; *Sabella, supra,* 272 *F.*2d at 212. When these courts employed double jeopardy analysis, they did not consider whether alternative proofs might have been used when the same evidence was actually used. In fact, *Vitale* suggests this would be impermissible because courts must evaluate *actual* use:

> [I]t may be that to sustain its manslaughter case the State may find it necessary to prove a failure to slow or to rely on conduct necessarily involving such failure; it may concede as much prior to trial. In that case, because Vitale has already been convicted for conduct that is a necessary element of the more serious crime for which he has been charged, his claim of double jeopardy would be substantial. [447 *U.S.* at 420–421, 100 *S.Ct.* at 2267, 65 *L.Ed.*2d at 238.]

The question concerning whether the evidence is necessary is implicated when the second offense actually requires proof of an additional element. *DeLuca* enunciated a narrowing process to be used when one crime conceivably requires proving a fact not required for the other, such that courts must compare the relevant elements of both charges to see whether the factual basis for establishing one will necessarily be reused.[7]  *Com-*

---

[7]Following *Blockburger v. United States,* 284 *U.S.* 299, 304, 52 *S.Ct.* 180, 182, 76 *L.Ed.* 306, 309 (1932), there is no double jeopardy bar when *each* crime requires proof of an additional fact, but if one crime is necessarily established by proving the other, double jeopardy will bar the subsequent prosecution. Thus, for example, in *Vitale, supra,* 447 *U.S.* 410, 100 *S.Ct.* 2260, 65 *L.Ed.*2d 228, a prosecution on death by auto would have been barred if after prosecuting defendant for failure to slow, proving the element of recklessness would have depended on using the same facts that proved failure to slow, because

*pare* Thomas, "Successive Prosecutions," *supra,* 71 *Iowa L.Rev.* at 386 (calling *Vitale*'s "same evidence" test the "necessary element" test: "Successive prosecutions would be barred in other situations based on a case-by-case analysis of whether the two offenses required proof of the same conduct to satisfy a necessary element.").

In the present case, even though the theft prosecution involved an additional element—intent to defraud—no additional facts were necessary to prove the second offense. The evidence of intent to defraud was also used to prove knowledge and motive in establishing the offense of the false police report. Thus, in fact, the same and sole facts used to prove the filing of the false police report were *sufficient* to prove the entire crime of attempted theft by deception, with no additional facts necessary to be proved. Again, even if alternative facts would have proved the second crime, the fact that they were not introduced or accepted as part of the second plea should preclude the second conviction.

In sum, double jeopardy prevents the recycling of the same evidence in order to gain another conviction. Therefore, because the same evidence was used in this case, double jeopardy should bar defendant's subsequent prosecution and conviction for attempted theft by deception.

## III.

In addition, fundamental fairness in these circumstances should bar prosecution for both theft by deception and arson. This doctrine governs important aspects of this case in two important ways: first, the State has a duty, pursuant to *State v. Gregory, supra,* 66 *N.J.* 510, to resolve in one disposition the several offenses arising from a single scheme to the extent the State has sufficient facts to bring the indictments at one time;

---

then proving the additional element of death would have necessarily established the lesser offense.

and second, both the State and the trial court have an obligation to ensure the fairness of the plea bargain, particularly the duty to inform defendant of all material consequences of the plea agreement, including any remaining penal risks to which defendant will be exposed.

Fundamental fairness is a doctrine that is an integral part of due process, and is often extrapolated from or implied in other constitutional guarantees. *See, e.g., Brady v. Maryland,* 373 *U.S.* 83, 83 *S.Ct.* 1194, 10 *L.Ed.*2d 215 (1963); *State v. Ramseur,* 106 *N.J.* 123, 379 (1987) (Handler, J., concurring); *State v. Abbati,* 99 *N.J.* 418, 429–30 (1986); *N.J. Parole Bd. v. Byrne,* 93 *N.J.* 192 (1983); *State v. Gregory, supra,* 66 *N.J.* 510. The doctrine effectuates imperatives that government minimize arbitrary action, *State v. Ramseur, supra,* 106 *N.J.* at 379, and is often employed when narrowed constitutional standards fall short of protecting individual defendants against unjustified harassment, anxiety, or expense. *See generally* Greenberg, "New Jersey's 'Fairness and Rightness' Doctrine," 15 *Rutgers L.J.* 927 (1984).

The doctrine of fundamental fairness has been employed consistently to enhance the underlying principles of double jeopardy. *See State v. Abbati, supra,* 99 *N.J.* 418; *State v. Gregory, supra,* 66 *N.J.* 510; *State v. Currie,* 41 *N.J.* 531 (1964). The standard for applying this doctrine is whether a defendant held a reasonable expectation that further prosecution would be pursued and whether it would be fair to subject a defendant to additional prosecution. *See State v. Gregory, supra,* 66 *N.J.* at 518 ("stress [is] not on the various tests but on the underlying consideration of fairness and reasonable expectations"); *State v. Abbati, supra,* 99 *N.J.* at 430 ("The anxiety, vexation, embarassment, and expense to the defendant of subsequent reprosecution where no new evidence exists is a proper subject for the application of traditional notions of fundamental fairness and substantial justice."). Fundamental fairness is used to extend the underlying goals of double jeopardy, which are to prevent vexation, anxiety, and harass-

ment to the defendant, *see Green v. United States*, 355 *U.S.* 184, 187–88, 78 *S.Ct.* 221, 223, 2 *L.Ed.*2d 199, 204 (1957) whether or not the State intended its actions to have that effect. *See State v. Gregory, supra*, 66 *N.J.* at 511, 518 (court stated that whether police action was "deliberate" or "inadvertent," "[s]uch withholding and later prosecution smacks of harassment and oppression and should be barred.")

Because the double jeopardy test is narrow and often applied apart from circumstances bearing primarily on the reasonable expectations that we impute to defendants, fundamental fairness has provided courts added flexibility to ameliorate criminal procedures in the interests of "rightness" and "fairness." *See generally* Greenberg, "New Jersey's 'Fairness and Rightness' Doctrine," *supra*, 15 *Rutgers L.J.* 92. This flexibility, as it relates to double jeopardy, originated in *State v. Currie, supra*, 41 *N.J.* 531, which, although it did not use fundamental fairness to bar a criminal indictment following conviction on a motor-vehicle offense, foreshadowed the possibility that under some circumstances, defendants could reasonably expect a single disposition of offenses arising from the same criminal episode, even if not required under double jeopardy analysis. That opportunity was taken in *State v. Gregory, supra*, 66 *N.J.* 510.

In *Gregory*, this Court held that where a prosecutor was fully aware of the facts necessary to bring an indictment against a defendant for the sale of heroin and possession with intent to distribute, but indicted and convicted defendant only of the sale charge, a subsequent prosecution for possession with intent to distribute would be barred on fundamental fairness grounds. Applying the *Gregory* analysis to the present case, it is clear the police had sufficient facts to bring both the charges of filing a false police report and attempted theft by deception at the same time. In fact, the prosecutor did not require or obtain any additional facts to seek the second indictment. Therefore, the indictment on the theft-by-deception charge falls squarely within *Gregory*'s prohibitions—that is,

the police had sufficient facts to bring both the charges of filing a false police report and attempted theft by deception at once, and as in *Gregory*, the police obtained no new facts to justify its bringing the attempted theft by deception charge later.

It is not clear the police had sufficient facts to indict defendant on the third-degree arson charge at the time they filed the complaint for filing a false police report. However, there was enough evidence to engender a strong suspicion that defendant might be implicated in the arson. The police could have taken steps at that time to investigate such a charge, even if simply to have questioned defendant on his participation at that point. The record does not indicate that any such questioning took place, even though when he was questioned on the other aspects of the scheme to defraud by detectives from both counties together, the Union County detective had already taken responsibility for investigating the arson.

It seems reasonable that an eighteen-year-old (and obviously, an immature one) who admitted to attempting to defraud the insurance company but who knew that he had not helped carry out the plan of arson could readily believe "the matter would be over," (which is what he claims was explicitly promised to him) and therefore would not be subject to any further criminal liability. Although the police might not have had sufficient factual knowledge of defendant's involvement in the arson to bring an indictment at that time, they surely understood better than he the subtler shades of criminal liability to which he was then exposed—namely, that if they learned that defendant even suspected Andy "would probably burn" the car, he could be subject to an arson charge. Therefore, in giving him the impression that his admissions would mean the whole matter would be "over," it is reasonable to impute to the defendant the expectation that short of the police discovering any deeper involvement in the matter (such as actually planning or participating in the arson), he would not be subject to further criminal liability.

This conclusion should not be altered by the circumstance that some of the offenses generated by this single course of criminal conduct are disorderly-persons offenses cognizable in a municipal court while others are crimes. On several occasions, this Court has evoked double jeopardy and fundamental fairness principles to hold that State law-enforcement authorities shall bear the burden for coordinating its response, regardless of differences in jurisdiction, venue, or the magnitude of the crimes. For example, on several occasions this Court has ruled that convictions on quasi-criminal motor vehicle violations can give rise to double jeopardy violations when subsequent criminal charges are brought, despite the differences in the magnitude of the offenses. *See State v. DeLuca, supra,* 108 *N.J.* 98; *State v. Dively, supra,* 92 *N.J.* 573 (undercutting *State v. Currie*'s theory that motor-vehicle violations and criminal offenses can be distinguished for the purposes of determining a defendant's reasonable expectations (*supra,* 41 *N.J.* 541–44)); *State v. Tropea,* 78 *N.J.* 309 (1978). These cases demonstrate that even when the violations are of a different magnitude, this Court will acknowledge and maintain that defendant's expectations of a single disposition for crimes arising out of a single criminal episode are reasonable. Further, they are not only reasonable but necessary for the minimization of arbitrary government conduct and for the orderly administration of justice:

> An effective, orderly procedure dictates the necessity of an arrangement whereby more serious crimes are tried in the court of plenary jurisdiction as intended, rather than disposed of in the municipal court for an infraction of a substantially minor nature.... Accordingly, it is necessary that there be effective cooperation between the municipal courts and the county prosecutor. [*State v. Dively, supra,* 92 *N.J.* at 589.]

*See also State v. Abatti, supra,* 99 *N.J.* at 431: (The Court has "general responsibility to assure the overall efficient administration of the criminal justice system").

Furthermore, the State cannot escape this consequence because its officers acted in good faith. *Cf. State v. Novembrino,* 105 *N.J.* 95 (1987) (State is obligated to act with objective

reasonableness in search and seizure); *State v. Bruzzese,* 94 *N.J.* 210 (1983) (same). Double jeopardy constraints are not lessened because state law-enforcement officers may have proceeded in error. *See State v. Lynch, supra,* 79 *N.J.* 327. The failure of the State to coordinate its prosecutorial response to a single defendant will not be excused because some of its agents were under a misapprehension concerning their respective responsibilities. Differences in jurisdiction and venue cannot validate a fragmented and haphazard approach in prosecuting a person who is charged with offenses arising from a single criminal scheme or episode. The underlying principles served by double jeopardy protection and its extension through the fundamental fairness doctrine are that individual defendants must be protected against the "State" from abusing its much greater power and resources in relation to individuals. *See Green v. United States, supra,* 355 *U.S.* at 187–88, 78 *S.Ct.* at 223, 2 *L.Ed.*2d at 204.

The majority states that defendant entertained no reasonable expectation to such coordination. It thus excuses the State's laxity in this case by narrowly defining and limiting what expectations are "reasonable." Instead, the Court should recognize that the "reasonable expectation" standard is two-fold: first, it relates "descriptively" to an objective assessment of what an ordinary defendant is entitled to expect as a result of prosecutorial action and does not turn on a subjective standard that focuses on the subjective state of mind of the individual defendant or the good or bad faith of the State; second, it arises "prescriptively" in that it is employed to impose duties on the State in order to guide the future conduct of law-enforcement authorities, thereby setting standards on what expectations are reasonable.

To measure a defendant's reasonable expectations in descriptive terms, an objective standard is used that looks strictly at the reasonably anticipated or foreseeable effects on the defendant. *See State v. Abbati, supra,* 99 *N.J.* at 428–429 (double jeopardy rejected because no bad faith was attributed to the

prosecutor in seeking a mistrial; however, the "anxiety, vexation, embarrassment, and expense to the defendant" precluded retrial on grounds of fundamental fairness); *State v. Gregory, supra,* 66 *N.J.* at 511 (fundamental fairness precluded subsequent prosecution whether police actions were deliberate or inadvertent). No "bad faith" is required. Thus, in a case presenting the threat of fragmented successive prosecutions, all that is necessary is that defendant have a reasonable expectation that the entire matter of criminal liability has been resolved by an initial concluded prosecution. *Id.* at 518. I would reject the majority's criterion that a "serious injustice" or "egregious deprivation" is required before defendant can show harm. *See ante* at 707. We do not insist on that degree of injury in order to demonstrate the violation of important constitutional rights. *See, e.g., State v. Novembrino, supra,* 105 *N.J.* 95; *State v. Bellucci,* 81 *N.J.* 531 (1980). Instead, fundamental fairness, as a constitutional enhancer, is used to protect against unjustified harassment, anxiety, vexation, and expense to individual defendants. In this case, the facts show that defendant had a reasonable basis for believing the theft-by-deception charge would have been disposed once he pled guilty to filing a false police report in that the police needed no further information to bring such a charge. Further, he had no reasonable basis for believing that further evidence regarding even his limited suspicion that Andy "would probably burn" the car would expose him to further criminal liability.

Second, in prescriptive terms, this Court maintains a continuing responsibility to set standards of reasonableness to guide future conduct, irrespective of a defendant's actual expectations. *See, e.g., State v. Abatti, supra,* 99 *N.J.* 418. In this case, the majority, I believe, fails to apply the reasonable-expectation standard "prescriptively" with the goal of preventing arbitrary conduct that "smacks of harassment." *See, e.g., State v. Gregory, supra,* 66 *N.J.* at 518. The Court should recognize that under these circumstances the State had a duty to bring the theft-by-deception charge along with the initial

filing-of-the-false-police-report charge, and should have either begun its investigation into the arson charge or, in the alternative, have taken responsibility to warn defendant that notwithstanding his guilty plea, arson was still suspected as it related to the scheme to defraud such that defendant might be subject to further criminal liability.

## IV.

There are still several loose ends. I believe the remedy is to set aside and reverse defendant's conviction on the charge of attempted theft by deception. This charge should be deemed barred by his earlier conviction for filing a false report. I also believe that he should not be subject to the charge of arson because that charge should also be deemed barred by the earlier conviction, and, consequently, that indictment should remain dismissed.

The State, however, seemingly objects to the earlier guilty plea to filing a false report, suggesting that it ought to be withdrawn if defendant's subsequent prosecutions are to be negated. I also question the validity of this plea bargain, given the fact that the trial court did not advise defendant of pending risks of future prosecution resulting from the same criminal episode. Due process protects a defendant's reasonable expectations in a plea bargain. *See Santobello v. New York*, 404 *U.S.* 257, 262, 92 *S.Ct.* 495, 499, 30 *L.Ed.*2d 427, 433 (1971); *State v. Warren*, 115 *N.J.* 433 (1989); *State v. Taylor*, 80 *N.J.* 353 (1979); *State v. Thomas*, 61 *N.J.* 314 (1972). The "touchstone is basic fairness to the defendant." *Taylor, supra,* 80 *N.J.* at 363. This means all material terms must be clearly disclosed, fully understood, and knowingly and voluntarily accepted by the defendant. *State v. Warren, supra,* 115 *N.J.* 433; *State v. Taylor, supra,* 80 *N.J.* at 364.

The remedy for the court's failure to satisfy the "knowing and voluntary" requirement is to allow the defendant to vacate

the plea agreement. *R.* 3:9–3(e); *State v. Taylor,* 80 *N.J.* at 364; *State v. Thomas, supra,* 61 *N.J.* at 322. However, the State's expectations, namely, the freedom to continue to prosecute defendant, were not expressed or included as part of the plea bargain. Under these circumstances, therefore, the State would not be entitled to withdraw from or vacate the guilty plea. *Cf. State v. Warren, supra,* 115 *N.J.* at 437 (prosecutor cannot withdraw from plea bargain if the State's sentencing expectations are disappointed). If the defendant were to seek to withdraw the guilty plea to filing a false police report on the ground that it was not knowingly and voluntarily given, then he would be exposed again to prosecution for all of the offenses arising out of the criminal episode.

In sum, I would now reverse defendant's conviction for attempted theft by deception and affirm the dismissal of the indictment for third-degree arson. I would stay this judgment and remand the matter to the Superior Court, Law Division, Essex County, as a municipal court, with leave to defendant to bring a motion to set aside his guilty plea and conviction of the disorderly-persons offense of filing a false police report. If defendant declines to bring such a motion, I would affirm that conviction and remove the stay of judgment vacating and dismissing, respectively, the subsequent conviction and indictment. If such a motion is brought, I would direct the Superior Court to vacate the guilty plea and set aside the conviction of the disorderly persons offense with leave to the State to reinstate all three charges in the Superior Court.

*For reversal and remandment* —Justices CLIFFORD, POLLOCK, O'HERN and STEIN—4.

*For reversal* —Justice GARIBALDI—1.

*Opposed* —Justice HANDLER—1.