**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4707-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MICHELLE J. HURLEY,

     Defendant-Appellant.

_____

Submitted January 3, 2022 – Decided March 15, 2022

Before Judges Sumners and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 16-05-0665.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the briefs).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Daniel J. Gilbert, Assistant Prosecutor, on the brief).

PER CURIAM

In two separate trials, juries found defendant Michelle J. Hurley guilty of second-degree reckless manslaughter, second-degree aggravated assault, third-degree possession of a weapon for an unlawful purpose, and fourth-degree unlawful possession of a weapon. The offenses arose from the death of her husband, David Hurley; the juries rejected defendant's claim of self-defense. Following merger, defendant was sentenced to an aggregate eight-year prison term subject to an eighty-five percent period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

In her appeal, she argues:

> POINT I
>
> THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO DISMISS THE INDICTMENT.
>
> POINT II
>
> AS THE STATE FAILED TO PROVE THE MANNER OF DEATH AND TO ESTABLISH THAT DEFENDANT ACTED RECKLESSLY, THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION FOR ACQUITTAL ON THE MANSLAUGHTER CHARGE.
>
> POINT III
>
> THE TRIAL COURT'S CUMULATIVE ERRORS DENIED DEFENDANT A FAIR AND RELIABLE TRIAL. (NOT RAISED BELOW).

POINT IV

AS DEFENDANT WAS CONVICTED BY UNRELIABLE AND QUESTIONABLE MEDICAL EVIDENCE, BASIC FAIR PLAY AND FUNDAMENTAL FAIRNESS REQUIRE A NEW TRIAL. (NOT RAISED BELOW).

POINT V

GIVEN THE UNIQUE CIRCUMSTANCES OF THIS CASE, THE IMPOSITION OF AN EIGHT[-]YEAR PRISON SENTENCE WAS MANIFESTLY UNFAIR AND EXCESSIVE.

Unpersuaded by any of these arguments, we affirm.

I

In late September 2015, defendant and David were in the process of divorcing but continued to live in their Bayonne marital home, sleeping in separate bedrooms. Hearing loud female screams, next-door neighbors Nicole Rivera and her husband went to the Hurley home to see if help was needed. After defendant opened the back door, Nicole went upstairs and saw David lying unconscious on the bed with his head leaning over the foot of the bed. Paramedics and the City of Bayonne police were summoned. David was hospitalized and placed on life support; he died ten days later.

Following an investigation by the Hudson County Prosecutor's Office (HCPO), accusations against defendant for causing David's death by

3

strangulation with an electric lamp cord were presented to a grand jury. Based on the testimony of Bayonne police detective Timothy Carey and HCPO detective Sean O'Leary, defendant was indicted for: first-degree murder, N.J.S.A. 2C:11-3(a)(1)/(2); first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a); second-degree reckless manslaughter, N.J.S.A. 2C:11-4(b)(1); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree possession of a weapon, an electric lamp cord, for an unlawful purpose, N.J.S.A. 2C:39-4(d); and fourth-degree unlawful possession of a weapon, an electric lamp cord, N.J.S.A. 2C:39-5(d). Seven months later, the trial court denied defendant's motion to dismiss the indictment.

Before us, defendant contends the trial court erred in denying her motion. She avows that, based upon the prosecutor's improper questions, the "grand jury hearing was a compilation of impermissible expert opinion, false allegations, and conclusions not supported in the evidentiary record," which led to the withholding of "exculpatory or contradictory evidence . . . from the jury." Pointing to Carey's testimony, she asserts that, under the guise of a forensic pathologist, he provided false, impermissible expert and conclusory testimony. She states Carey was unqualified to testify: (1) David must have been unconscious when defendant strangled him; (2) defendant ripped the cord off

the wall in order to strangle David; (3) strangulation may have triggered David's underlying medical conditions; (4) about anything regarding the parties' divorce; and (5) that there was a restraining order between the defendant and David. As to O'Leary, defendant maintains he testified as an unqualified medical expert stating: (1) "the petechia[] observed in the whites of [David's] eyes was caused by [his] neck or airway passage being compressed" by strangulation; (2) David's alcohol level would not have rendered him unconscious at time of the incident; and (3) it would only take a few minutes to strangle someone unconscious.

Generally, any claim of error in the indictment process is rendered harmless by a guilty verdict. State v. Simon, 421 N.J. Super. 547, 551-52 (App. Div. 2011). Thus, given defendant's convictions, we can reject her arguments concerning the failure to dismiss the indictment outright with no discussion. Nevertheless, for the sake of completeness, we explain why her arguments have no merit.

Our review of the grand jury proceeding reveals there is no cause to disturb the trial court's ruling because it neither abused its discretion nor misapplied the law. See State v. Zembreski, 445 N.J. Super. 412, 424 (App. Div. 2016) (holding we review a trial court's decision on a motion to dismiss an indictment for a clear abuse of discretion); State v. Nash, 212 N.J. 518, 540-41

5

(2013) (holding the trial court's legal conclusions are reviewed de novo).  The State did not, as defendant argues, elicit impermissible expert and conclusory testimony from either Carey or O'Leary.

Given that rules of evidence do not apply to grand jury proceedings, In re Grand Jury Subpoena Issued to Galasso, 389 N.J. Super. 281, 292 (App. Div. 2006), it was permissible for Carey to testify based on his twenty-four years' experience as a detective, not as a forensic pathologist.  He informed the grand jury that defendant told him she choked David with the lamp cord, and he reasoned that David was unconscious at the time she placed the cord around his neck because of the significant difference in weight and height between him and defendant;[1] there were no signs of a fight; and there were no visible injuries on defendant or David.  Due to his prior experience as an electrician, Carey related that the only way for the lamp cord to became unattached from the wall was for defendant to yank if off.

Carey's testimony that David's other health issues would not have been triggered but for him being "choked out" was consistent with the autopsy report prepared by Union County Medical Examiner Dr. Junaid Shaikh.  He testified

---

[1]  Carey stated defendant was five-feet five-inches weighing in the "170s," while David was "at least 280, 290" pounds.

that the medical examiner concluded the cause of death was homicide from anoxic encephalopathy due to ligature neck compression, as well as hypertensive heart disease, obesity, and amnestic diabetes mellitus.

Carey's testimony that there was "a restraining order [and] maybe a violation of a restraining order" between the couple was promptly met with the prosecutor's directive to the grand jury to disregard any references to a restraining order because it had no bearing on the charges against defendant. The jurors responded affirmatively. With this curative instruction, the prosecutor did not "impinge on [the] grand jury's independence" or "improperly influence its determination." State v. Francis, 191 N.J. 571, 587 (2007).

Turning to O'Leary's testimony, defendant's attack fails as his testimony was based on his involvement in ligature deaths—some involving spouses—and alcohol-related offenses during his thirteen years' experience in the HCPO's Homicide Unit, not as a medical expert. He described petechia as "small, pin-like blood vessel breakages in the whites of one's eyes," which was "most commonly" caused by "compress[ing] the neck or the airway." He also testified David's .11 blood alcohol level when he was taken to hospital, was "slightly above the [.08] legal limit for driving," but would not prevent a person from walking, talking, or defending oneself.

In sum, neither Carey nor O'Leary gave grand jury testimony that was improper or in any way demonstrated the "indictment is manifestly deficient or palpably defective." State v. Twiggs, 233 N.J. 513, 531-32 (2018) (quoting State v. Hogan, 144 N.J. 216, 228-29 (1996)). Accordingly, the grand jury was able to fulfill its task of not establishing defendant's guilt beyond a reasonable doubt, and "view[] the evidence and the rational inferences drawn [there]from . . . in the light most favorable to the State, . . . [and] reasonably believe that [crimes] occurred and that [] defendant committed [them]." State v. Morrison, 188 N.J. 2, 13 (2006). There was no prosecutorial misconduct in the grand jury presentation.

II

At the end of the State's case, defendant made an unsuccessful Rule 3:18-1 motion for a judgment of acquittal. On appeal, essentially repeating arguments rejected by the court, defendant asserts that the reckless manslaughter charge should have been dismissed because the State's evidence failed to establish that David died due to strangulation given the absence of any ligature marks around his neck. She also argues the State failed to present any evidence that she knew about his underlying medical conditions, which she contends were the cause of death, not her admitted strangulation. We are unpersuaded.

A-4707-18

"In assessing the sufficiency of the evidence on an acquittal motion, we apply a de novo standard of review." State v. Williams, 218 N.J. 576, 593-94 (2014). When a defendant moves for acquittal following conclusion of the State's case, the trial court "must determine whether, based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt." Id at 594. "In assessing the sufficiency of the evidence on an acquittal motion, we apply a de novo standard of review." Id. at 593-94 (2014).

When "considering circumstantial evidence, we follow an approach 'of logic and common sense. [If] each of the interconnected inferences [necessary to support a finding of guilt beyond a reasonable doubt] is reasonable on the evidence as a whole, judgment of acquittal is not warranted.'" State v. Jones, 242 N.J. 156, 168 (2020) (second alteration in original) (quoting State v. Samuels, 189 N.J. 236, 246 (2007)). We only consider "the evidence on the State's case, unaided by what defendant later developed at trial." State v. Lemken, 136 N.J. Super. 310, 314 (App. Div. 1974).

Reckless manslaughter is a lesser-included offense of murder. State v. Jenkins, 178 N.J. 347, 361 (2004). A person commits reckless manslaughter

when they consciously disregard a substantial and unjustifiable risk that death will result from their conduct. N.J.S.A. 2C:11-4(b)(1); N.J.S.A. 2C:2-2(b)(3). "The risk must be of such a nature and degree that . . . its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." N.J.S.A. 2C:2-2(b)(3). The degree of risk for recklessness must be more than "a mere possibility of death." State v. Curtis, 195 N.J. Super. 354, 364 (App. Div. 1984); see also State v. Galicia, 210 N.J. 364, 378 (2012) ("[W]hen it is only possible that death will result, the homicide constitutes reckless manslaughter." (citing Curtis, 195 N.J. Super. at 364)).

In the present matter, the allegation of reckless manslaughter involved defendant strangling her husband. Giving all reasonable inferences to the State's evidence at the close of its case, the elements of second-degree reckless manslaughter were satisfied. Defendant admitted to Carey and Bayonne police officer Deena Mendez that she wrapped the lamp cord—which was admitted into evidence—around David's neck. Carey and Mendez testified they did not notice any injuries on defendant nor any disarray in the bedroom, which would support defendant's self-defense claim.

There was ample medical evidence supporting the State's theory that defendant's conduct caused David's death. Although none of the medical experts

observed visible ligature marks on David, Dr. Shaikh explained why minimal marks were present on the victim's neck, concluding it was due to David's poor health—hypertensive heart disease, obesity, and diabetes. Contrary to defendant's argument that David suffered a stroke, Dr. Jawad Kirmani, who treated David at the hospital, testified that David did "[n]ot stroke in the traditional sense, but any cessation of the oxygen and blood flow to the brain could be called [a] stroke." Dr. Hammad Choudhry, who examined David the night he was taken to the emergency room, testified that he did not suffer a heart attack or blood clots. As noted, Dr. Shaikh determined David's official cause of death was anoxic encephalopathy due to ligature neck compression, with the contributory causes of hypertensive heart disease, obesity, and diabetes. In addition, Dr. Kirmani examined David's eyes and observed he had petechial hemorrhages, "that could be reflective of possible strangulation." Accordingly, defendant's motion for acquittal was properly denied by the court.

III

Defendant contends she was deprived of a fair trial because of the trial court's cumulative errors in not granting her motions to dismiss the indictment and for judgment of acquittal. When multiple errors are alleged, "the predicate for relief for cumulative error must be that the probable effect of the cumulative

11

error was to render the underlying trial unfair." State v. Wakefield, 190 N.J. 397, 538 (2007). However, even where a defendant alleges multiple errors, "the theory of cumulative error will still not apply where no error was prejudicial and the trial was fair." State v. Weaver, 219 N.J. 131, 155 (2014). Given our conclusions that there were no trial errors regarding the motion rulings, there was no cumulative effect that denied defendant a fair trial.

IV

Defendant contends the doctrine of basic fair play and fundamental fairness entitles her to a new trial because she was convicted based on unreliable and questionable medical evidence. She maintains the State's witnesses and autopsy report failed to show David died due to strangulation, and that the State failed to present evidence establishing that she and David knew of his underlying medical conditions. Although these arguments were raised in the context of her motions to dismiss the indictment and judgment of acquittal, they were not raised before the trial court to substantiate a claim that she was denied fundamental fairness. Thus, we review for plain error under Rule 2:10-2, meaning an "error possessing a clear capacity to bring about an unjust result and which substantially prejudiced the defendant's fundamental right to have the jury fairly evaluate the merits of his [or her] defense." State v. Timmendequas, 161

N.J. 515, 576-77 (1999) (quoting State v. Irving, 114 N.J. 427, 444 (1989)). A reversal based on plain error requires us to find that the error likely led to an unjust result that is "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Williams, 168 N.J. 323, 336 (2001) (quoting State v. Macon, 57 N.J. 325, 336 (1971)).

The fundamental fairness doctrine derives from an implied judicial authority to create appropriate and just remedies and to assure the efficient administration of the criminal justice system. State v. Abbati, 99 N.J. 418, 427 (1985). The Supreme Court has described this doctrine as "an integral part of due process" that "is often extrapolated from or implied in other constitutional guarantees." State v. Miller, 216 N.J. 40, 71 (2013) (quoting Oberhand v. Dir., Div. of Tax'n, 193 N.J. 558, 578 (2008)); see also Abbati, 99 N.J. at 429.

The doctrine is applied "sparingly" and only where the "interests involved are especially compelling"; thus, if a defendant would be subject "to oppression, harassment, or egregious deprivation," it is applied. Doe v. Poritz, 142 N.J. 1, 108 (1995) (quoting State v. Yoskowitz, 116 N.J. 679, 712 (1989) (Garibaldi, J., concurring and dissenting)). It can be applied "at various stages of the criminal justice process even when such procedures were not constitutionally compelled." Ibid. The doctrine's "primary considerations should be fairness

13

and fulfillment of reasonable expectations in the light of the constitutional and common law goals." Yoskowitz, 116 N.J. at 706 (emphasis omitted) (quoting State v. Currie, 41 N.J. 531, 539 (1964)).

The doctrine is an "elusive concept" and its "exact boundaries are undefinable." Id. at 704-05 (internal quotation marks omitted). "For the most part, it has been employed when the scope of a particular constitutional protection has not been extended to protect a defendant." Id. at 705.

Defendant's argument fails to establish the type of unquestionably unfair circumstances that have garnered judicial support for application of the doctrine of fundamental fairness. First and foremost, as noted above, we reject defendant's challenge to the State's medical proofs of David's cause of death raised in support her claims that the trial court erred in denying her motions to dismiss the indictment and judgment of acquittal. Because we concluded the State's medical evidence was sufficient to defeat those challenges, there is no reason to find the evidence was unreliable and thus supports a reversal of defendant's convictions caused by a denial of fundamental fairness. That said, we address the case law she relies upon.

In claiming the doctrine of fair play and fundamental fairness entitled her to a new trial, defendant relies upon four cases: State v. Maisonet, 166 N.J. 9

14

(2001); <u>Poritz</u>; <u>State v. Tropea</u>, 78 N.J. 309 (1978); and <u>State v. Baker</u>, 310 N.J. Super. 128 (App. Div. 1998). None of these cases implicate the same factual or legal circumstances presented by defendant.

In <u>Maisonet</u>, the defendant was forced to appear for a jury trial over several days in a dirty and disheveled condition having been denied access to soap, running water, toothpaste, or a comb. 166 N.J. at 13-21. In <u>Poritz</u>, the doctrine of fundamental fairness required the institution of constitutional procedural protections to determine classification of convicted sex offenders who would be subject to community supervision and notification provisions. 142 N.J. at 108-09. In <u>Tropea</u>, double jeopardy precluded remand for retrial of a motor vehicle speeding violation when the State failed to introduce evidence of an essential element of proof—the speed limit. 78 N.J. 309, 311-16. In <u>Baker</u>, fundamental fairness precluded the State from seeking the death penalty based on deliberate prosecutorial misconduct in seizing juror notes and releasing them to the press after conviction but before the penalty phase had commenced. 310 N.J. Super. at 138.

Unlike in <u>Maisonet</u>, <u>Poritz</u>, <u>Tropea</u>, and <u>Baker</u>, defendant's fundamental fairness argument is not based upon his appearance before the jury, constitutional privacy concerns, double jeopardy issues, or prosecutorial

invasion of the jury's deliberative processes.  Indeed, we favor the State's argument that State v. Loray, 41 N.J. 131 (1963), is more analogous to this matter.  There, the murder victim had a pre-existing heart condition.  Id. at 140. The Court held that although the primary cause of death was heart failure, "the precipitating and contributory causes were the injuries resulting from the assault" by the defendant.  Ibid.  The Court noted:

> The fact that a victim of an assault is in a weakened condition or suffers from disease and as a result succumbs to a blow which might not be fatal to a person in perfect health does not lessen the criminal responsibility for causing death.  We know of no duty imposed upon a victim to supply a guarantee of good health to a robber.
>
> [Ibid.]

Here, the testifying physicians all recognized that David's health maladies worsened his ability to recover but concluded the primary cause of death was lack of oxygen to the brain caused by ligature strangulation.  We are convinced that no manifest injustice occurred in the jury's verdict due to unreliable and questionable medical evidence.

V

At sentencing, the trial court applied aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) (the need for deterrence), and mitigating factor seven, N.J.S.A.

16

2C:44-1(b)(7) (no prior criminal record), finding "the aggravating factor[] preponderate[s] over the mitigating factor[]."  Consequently, defendant was sentenced to an eight-year prison term subject to NERA for the second-degree reckless manslaughter.  The convictions for second-degree aggravated assault and third-degree possession of a weapon for an unlawful purpose were merged with the reckless manslaughter conviction.  On the fourth-degree unlawful possession of a weapon conviction, defendant was sentenced to a fifteen-month prison term to run concurrent with the reckless manslaughter conviction.

On appeal, defendant contends her eight-year sentence was excessive. She argues the court should have applied mitigating factors three, N.J.S.A. 2C:44-1(b)(3) ("defendant acted under a strong provocation"), four, N.J.S.A. 2C:44-1(b)(4) ("[t]here were substantial grounds tending to excuse or justify . . . defendant's conduct, though failing to establish a defense"), eight, N.J.S.A. 2C:44-1(b)(8) (the offense was "the result of circumstances unlikely to recur"); and nine, N.J.S.A. 2C:44-1(b)(9) (the defendant's character and attitude "indicate that the defendant is unlikely to commit another offense").  A lighter sentence is appropriate because, according to her, these four mitigating factors, plus the applied mitigating factor seven, outweigh the single aggravating factor the court found.

A-4707-18

Review of a criminal sentence is limited; a reviewing court must decide, "whether there is a 'clear showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)). Under this standard, a criminal sentence must be affirmed unless "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). If a sentencing court properly identifies and balances the factors and their existence is supported by sufficient credible evidence in the record, this court will affirm the sentence. See State v. Carey, 168 N.J. 413, 426-27 (2001); State v. Megargel, 143 N.J. 484, 493-94 (1996).

Defendant's contentions are without sufficient merit to warrant discussion, R. 2:11-3(e)(2), and we affirm substantially for the reasons stated by the court expressed at sentencing. We only add that the court addressed defendant's sentencing arguments and there is support in the record for its decision not to apply mitigating factors three, four, eight, and nine. In sum, the sentence does not shock our judicial conscience.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4707-18